Not Yet Scheduled for Oral Argument

**United States Court of Appeals for the District of Columbia Circuit**

**No. 12-7074**
_____

CHRISTINA CONYERS WILLIAMS,

    Appellee / Cross-Appellant

    v.

ROBERT JOHNSON, *et al.,*

    Appellants / Cross-Appellees

_____

APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

**Amicus Curiae Brief of the**
**Metropolitan Washington Employment Lawyers Association**
**in Support of Appellee / Cross-Appellant**
_____

Alan R. Kabat
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
Telephone:  202-745-1942
kabat@bernabeipllc.com

Les Alderman
Alderman, Devorsetz & Hora, PLLC
1025 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone:  202-969-8220
lalderman@adhlawfirm.com

*Counsel for Amicus Curiae*

September 16, 2013

**Certificate as to Parties, Rulings, and Related Cases**

(A)    **Parties and Amici.**  All parties appearing before the district court and in this Court are listed in the Brief for Appellants.

(B)    **Rulings Under Review.**  References to the rulings at issue appear in the Brief for Appellants.

(C)    **Related Cases.**  This case has not previously been before this Court. There are no related cases.

**Rule 29(c)(1) Corporate Disclosure Statement**

The Metropolitan Washington Employment Lawyers Association is an association.  It does not have any corporate parent.  It does not have any stock, and therefore no publicly held company owns 10% or more of the stock of this *amicus*.

**Rule 29(c)(5) Statement**

No party or party's counsel authored or funded this brief, and no person other than *amicus curiae* covered the printing costs of the brief.

## Rule 29(c)(4) Statement of the *Amicus Curiae*

The Metropolitan Washington Employment Lawyers Association (MWELA), founded in 1991, is a professional association and is the local chapter of the National Employment Lawyers Association, a national organization of attorneys who specialize in employment law. MWELA conducts continuing legal education programs for its more than 300 members, including an annual day-long conference which usually features one or more judges as speakers. MWELA also participates as *amicus curiae* in important cases in the three jurisdictions in which its members primarily practice – the District of Columbia, Maryland, and Virginia.

MWELA's members and their clients have an important interest in the proper interpretation of the amendment to the D.C. Whistleblower Protection Act that repealed the Section 12-309 notice of claim requirement. Hence, MWELA respectfully submits this brief to assist this Court in resolution of this appeal.

This Court approved MWELA's motion for leave to submit an amicus brief. *See* Order (May 15, 2013).

**Table of Contents**

INTRODUCTION .      .      .      .      .      .      .      .      .      .      1

ARGUMENT      .      .      .      .      .      .      .      .      .      2

I.      The D.C. Whistleblower Protection Act of 1998      .      .      2

    A.      The Purpose of the D.C. Whistleblower Protection Act      2

    B.      Rights and Obligations under the D.C. Whistleblower
       Protection Act      .      .      .      .      .      .      6

II.      The D.C. Whistleblower Protection Amendment Act of 2009
    Was Specifically Enacted to Address Procedural Barriers to
    Relief      .      .      .      .      .      .      .      .      8

III.      The 2009 Amendment to the Notice of Claim Requirement Is
    Procedural and Should be Applied Retroactively to Claims
    Arising Prior to 2009      .      .      .      .      .      .      10

    A.      Procedural Statutes are Presumed to be Retroactive      10

    B.      An Amendment to a Notice of Claim Provision Is
       Procedural      .      .      .      .      .      .      14

    C.      The Repeal of the Notice of Claim Requirement in the
       D.C. Whistleblower Protection Act Is Procedural      .      16

    D.      The Application of This Procedural Amendment Has No
       Effect on the District's Sovereign Immunity, Which Was
       Already Waived in 1998 .      .      .      .      .      23

    E.      The Statutory Purposes of Section 12-309 Will Not Be
       Affected by the Retroactive Application of the Procedural
       Amendment to the Notice of Claim Requirement of the
       D.C. Whistleblower Protection Act      .      .      .      25

CONCLUSION      .      .      .      .      .      .      .      .      .      29

CERTIFICATE OF COMPLIANCE  .       .       .       .       .       .       31

CERTIFICATE OF SERVICE  .       .       .       .       .       .       .       32

# Table of Authorities

## CASES

*Bank of America, N.A. v. Griffin*,
    2 A.3d 1070 (D.C. 2010) .   .   .   .   .   .   .   20

*Barnhardt v. District of Columbia*,
    8 A.3d 1206 (D.C. 2010) .   .   .   .   .   .   .   25-26

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988) .   .   .   .   .   .   .   13

\* *Bowyer v. District of Columbia*,
    779 F. Supp. 2d 159 (D.D.C. 2011) .   .   .   .   19-20, 23-24

*Bradley v. School Bd. of Richmond*,
    416 U.S. 696 (1974) .   .   .   .   .   .   .   11-13

*Brown v. United States*,
    742 F.2d 1498 (D.C. Cir. 1984) (*en banc*) .   .   .   .   26-27

\* *Cusick v. District of Columbia*,
    No. 2008 CA 6915 B (D.C. Super. Ct. Aug. 17, 2010) (Braman, J.)   17

*Davis v. District of Columbia*,
    No. 2005 CA 8772 B, 138 *Daily Wash. L. Reporter* 2497
    (D.C. Super. Ct. Nov. 23, 2010) (Edelman, J.) .   .   .   17-18

*Federal Broadcasting System v. FCC*,
    239 F.2d 941 (D.C. Cir. 1956) .   .   .   .   .   .   12

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) .   .   .   .   .   .   .   3

*Harris v. DiMattina*,
    250 Va. 306, 462 S.E.2d 338 (Va. 1995) .   .   .   .   15

\* *Lacek v. Washington Hosp. Center Corp.*,
    978 A.2d 1194 (D.C. 2009) .   .   .   .   .   11, 14-15

\* *Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) . . . . . . . 10-11, 13

*Marano v. Department of Justice*,
    2 F.3d 1137 (Fed. Cir. 1993) . . . . . . 4

*Michaud v. Northern Maine Med. Ctr.*,
    436 A.2d 398 (Me. 1981). . . . . . . 15

\* *Montgomery v. District of Columbia*,
    598 A.2d 162 (D.C. 1991) . . . . . . 11, 13

*Moore v. Agency for Int'l Dev.*,
    994 F.2d 874 (D.C. Cir. 1993) . . . . . . 12, 13

*Payne v. District of Columbia*,
    808 F. Supp. 2d 164 (D.D.C. 2011) . . . . . 22-23

*Pickering v. Board of Ed. of Township High Sch. Dist. 205*,
    391 U.S. 563 (1968) . . . . . . . 4

*San Diego v. Roe*,
    543 U.S. 77 (2004) (*per curiam*) . . . . . 3

\* *Sharma v. District of Columbia*,
    791 F. Supp. 2d 207 (D.D.C. 2011) . . . . . 22, 24-25

*Waples v. Yi*,
    169 Wash. 2d 152, 234 P.3d 187 (Wash. 2010) . . . 16

*Waters v. Churchill*,
    511 U.S. 661 (1994) . . . . . . . 3-4

\* *Williams v. Johnson*,
    794 F. Supp. 2d 22 (D.D.C. 2011) . . . . . 21-22, 24

\* *Winder v. Erste*,
    2011 U.S. Dist. LEXIS 101253 (D.D.C. Mar. 7, 2011) . . 18-19

**STATUTES**

D.C. Whistleblower Protection Act of 1998  .     .     .     .     .     *passim*

Whistleblower Protection Amendment Act of 2009,
D.C. Act 18-265, D.C. Law 18-117, 57 *D.C. Register* 896
(Jan. 22, 2010) (codified at D.C. Code § 1-615.52 *et seq.*).     .     .     *passim*

D.C. Code Ann. § 1-204.24d(25)     .     .     .     .     .     28

D.C. Code Ann. § 1-301.47a(a)(1), (2)     .     .     .     .     .     28

D.C. Code Ann. § 1-615.51     .     .     .     .     .     .     3

D.C. Code Ann. § 1-615.52(a)(6)(A)-(E)     .     .     .     .     5

D.C. Code Ann. § 1-615.54     .     .     .     .     .     .     5

D.C. Code Ann. § 1-615.54(a)(2)     .     .     .     .     .     .     9

D.C. Code Ann. § 1-615.54(a)(3)     .     .     .     .     .     .     10

D.C. Code Ann. § 1-615.58(1)-(3)     .     .     .     .     .     .     6-7

D.C. Code Ann. § 1-615.58(7)-(9)     .     .     .     .     .     .     7

D.C. Code Ann. § 12-309     .     .     .     .     .     .     .     *passim*

D.C. Code Ann. § 16-2801 *et seq.*     .     .     .     .     .     .     14

31 U.S.C. § 3730(h)     .     .     .     .     .     .     .     26

42 U.S.C. § 1983  .     .     .     .     .     .     .     .     26

## OTHER SOURCES

Chief Financial Officer, "Fiscal Impact Statement – Whistleblower
    Protection Amendment Act of 2009" (Nov. 18, 2009) . . 28

Council of the District of Columbia, Committee on Government Operations
    and the Environment, *Report:  Bill 18-233, The Whistleblower
    Protection Amendment Act of 2009* (Nov. 19, 2009) . *passim*

Council of the District of Columbia, "Notice:  D.C. Law 18-117,
    Whistleblower Protection Amendment Act of 2009,"
    57 *D.C. Register* 3150 (Apr. 16, 2010) . . . . 9

*Model Statutory Construction Act*, § 14 cmt. (1965) . . . 12

Singer & Singer, *Statutes and Statutory Construction [Sutherland]*,
    § 41.4 (7th ed. 2009) . . . . . . . 12

*Uniform Statute and Rule Construction Act*, § 16 (1995) . . . 12

## INTRODUCTION

The Metropolitan Washington Employment Lawyers Association ("MWELA"), a professional association of over 300 attorneys who represent employees in the District of Columbia area, respectfully submits this amicus brief to aid this Court in its resolution of an important statutory issue arising from the March 2010 amendments to the D.C. Whistleblower Protection Act of 1998.

Prior to 2010, District employees had to submit a notice of claim to the government, pursuant to D.C. Code Ann. § 12-309 (2001 ed.), in order to seek unliquidated damages.

The D.C. Council recognized that this requirement needlessly deterred District employees from reporting government misconduct, thereby thwarting the statutory purposes of protecting District employees from retaliation for having made protected disclosures, and of protecting the public interest in preventing government waste and abuse.  Hence, the D.C. Council enacted four procedural amendments to the D.C. Whistleblower Protection Act, including a repeal of the Section 12-309 notice of claim requirement.

Subsequently, four U.S. District Court judges, and two D.C. Superior Court judges, all held that since this was a procedural change in the law, under D.C. and Supreme Court precedent it was to be applied retroactively to claims that were pending as of the effective date of the amendment.

The disposition of this issue in this Court will have an important effect on the ability of District employees to enforce their statutory rights to be free of retaliation, and on the public interest in disclosures of government misconduct, so that the government and the public can take appropriate steps to address that misconduct in order to conserve taxpayer funds.

For these important reasons, MWELA respectfully submits this amicus brief.

## ARGUMENT

### I.     The D.C. Whistleblower Protection Act of 1998.

#### A.     The Purpose of the D.C. Whistleblower Protection Act.

The D.C. Whistleblower Protection Act is specifically intended to protect the interests of <u>both</u> government employees <u>and</u> the public through ensuring the prompt disclosure of government misconduct, so that remedial action can be taken to protect the employment rights of government employees and to protect the public interest in preventing waste and abuse.  The D.C. Council, when it enacted this statute in 1998, expressly stated this purpose:

> The Council finds and declares that the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal.  Accordingly, the Council declares as its policy to:
>
> (1)     Enhance the rights of District employees to challenge the actions or failures of their agencies and to express their views without fear of retaliation through appropriate channels within the agency,

2

complete and frank responses to Council inquiries, free access to law
enforcement officials, oversight agencies of both the executive and
legislative branches of government, and appropriate communication
with the public;

. . . .

(5)     Ensure that rights of employees to expose corruption,
dishonesty, incompetence, or administrative failure are protected;

. . . .

(7)     Protect employees from reprisal or retaliation for the
performance of their duties.

D.C. Code Ann. § 1-615.51 (2001 ed.).

The U.S. Supreme Court, in addressing First Amendment claims brought by

state and local government employees – claims that are similar in scope and

remedies to those under the D.C. Whistleblower Protection Act – has recognized

the significant public interest in allowing these employees to speak out on matters

of public concern.  *See Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006) ("The Court

has acknowledged the importance of promoting the public's interest in receiving

the well-informed views of government employees engaging in civic discussion.");

*San Diego v. Roe*, 543 U.S. 77, 82 (2004) (*per curiam*) ("[P]ublic employees are

often the members of the community who are likely to have informed opinions as

to the operations of their public employers, operations which are of substantial

concern to the public.  Were they not able to speak on these matters, the

community would be deprived of informed opinions on important public issues.");

*Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality op.) ("Government

3

employees are often in the best position to know what ails the agencies for which

they work; public debate may gain much from their informed opinions.");

*Pickering v. Board of Ed. of Township High Sch. Dist. 205*, 391 U.S. 563, 572

(1968) ("Teachers are, as a class, the members of a community most likely to have

informed and definite opinions as to how funds allotted to the operation of the

schools should be spent.  Accordingly, it is essential that they be able to speak out

freely on such questions without fear of retaliatory dismissal.").

The U.S. Court of Appeals for the Federal Circuit – which has jurisdiction

over claims brought by federal employees under the federal Whistleblower

Protection Act – has similarly recognized the strong public interest in protecting

government employees who disclose government misconduct:

> **The policy goal behind the WPA was to encourage government
> personnel to blow the whistle on wasteful, corrupt or illegal
> government practices without fearing retaliatory action by their
> supervisors or those harmed by the disclosures.** . . . We thus view
> the WPA as a good-government statute.  As long as employees fear
> being subjected to adverse actions for having disclosed improper
> governmental practices, an obvious disincentive exists to discourage
> such disclosures.  **A principal office of the WPA is to** eliminate that
> disincentive and freely **encourage employees to disclose that which
> is wrong with our government.**  How a protected disclosure is made,
> or by whom, matters not to the achievement of the WPA's goal.  The
> elements of misgovernment must be disclosed before they can be
> cured in satisfaction of the WPA's raison d'etre.

*Marano v. Dep't of Justice*, 2 F.3d 1137, 1142 (Fed. Cir. 1993) (emphasis added).

The D.C. Whistleblower Protection Act, in order to effectuate its statutory

purpose of serving the public interest, proscribes the government from taking an

adverse employment action against a District employee for making a "protected

disclosure . . . that the employee reasonably believes evidences" any of the

following five categories of government misconduct:

> (A)    Gross mismanagement;
>
> (B)    Gross misuse or waste of public resources or funds;
>
> (C)    Abuse of authority in connection with the administration of a public program or the execution of a public contract;
>
> (D)    A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
>
> (E)    A substantial and specific danger to the public health and safety.

D.C. Code Ann. § 1-615.52(a)(6)(A)-(E) (2001 ed.).

Hence, a private cause of action was established in order to protect District

employees who were retaliated against for having made a protected disclosure, so

that the underlying statutory purpose of the D.C. Whistleblower Protection Act is

properly satisfied. *See* D.C. Code Ann. § 1-615.54 (2001 ed.).

The plaintiff in this case for which MWELA is submitting an amicus brief,

and yet other current and former District employees who are represented by other

members of MWELA, have all brought statutory claims under this provision to

enforce their statutory right to be free of retaliation for having made protected

disclosures about government misconduct.

**B.    Rights and Obligations under the D.C. Statute.**

Critically, the D.C. Whistleblower Protection Act not only creates rights that

protect District employees, but also expressly imposes obligations on District

employees, including supervisors, to report government misconduct.  These rights

and obligations work in tandem in order to effectuate the statutory purpose of

protecting both employees and the general public.

District employees have the following rights under the D.C. Whistleblower

Protection Act, subject to certain limitations not applicable here:

> (1)    The right to freely express their opinions on all public issues,
> including those related to the duties they are assigned to perform . . .

> (2)    The right to disclose information unlawfully suppressed,
> information concerning illegal or unethical conduct which threatens or
> which is likely to threaten public health or safety or which involves
> the unlawful appropriation or use of public funds, and information
> which would tend to impeach the testimony of employees of the
> District government before committees of the Council or the
> responses of employees to inquiries from members of the Council
> concerning the implementation of programs, information which would
> involve expenditure of public funds, and the protection of the
> constitutional rights of citizens and the rights of government
> employees under this chapter and under any other laws, rules, or
> regulations for the protection of the rights of employees . . .

> (3)    The right to communicate freely and openly with members of

6

the Council and to respond fully and with candor to inquiries from committees of the Council, and from members of the Council . . . .

D.C. Code Ann. § 1-615.58(1)-(3) (2001 ed.).

Conversely, the D.C. Whistleblower Protection Act expressly provides that all District employees, including supervisors, have the mandatory obligation to report and disclose any of the five categories of government misconduct identified in Section 1-615.52(a)(6):

> (7)    Each employee of the District government shall make all protected disclosures concerning any violation of law, rule, or regulation, contract, misuse of government resources or other disclosure enumerated in § 1-615.52(a)(6), as soon as the employee becomes aware of the violation or misuse of resources;

> (8)    Each supervisor employed by the District government shall make all protected disclosures involving any violation of law, rule, regulation or contract pursuant to § 1-615.52(a)(6)(D) as soon as the supervisor becomes aware of the violation;

> (9)    The failure of a supervisor to make protected disclosures pursuant to § 1-615.52(a)(6)(D) shall be a basis for disciplinary action including dismissal.

D.C. Code Ann. § 1-615.58(7)-(9) (2001 ed.).

Taken together, these statutory rights and obligations are designed to ensure that the strong public interest in uncovering and addressing government misconduct will be met by protecting the rights of District employees to make these disclosures, so that the government and the public as a whole can take

appropriate actions to stop ongoing misconduct and to remediate the consequences

of past misconduct.

**II.    The District of Columbia Whistleblower Protection Amendment Act of 2009 Was Specifically Enacted to Address Procedural Barriers to Relief.**

In 2009, just over one decade after the D.C. Whistleblower Protection Act

was enacted, the D.C. Council realized that this statute required amending in order

to address:  (1) the fact that some government misconduct was not being disclosed

at all because some employees still feared retaliation; and (2) that certain

procedural barriers were improperly and needlessly preventing District employees

from bringing statutory whistleblower claims.  *See* Council of the District of

Columbia, Committee on Government Operations and the Environment, *Report:*

*Bill 18-233, The Whistleblower Protection Amendment Act of 2009* (Nov. 19,

2009) ("2009 Report") (excerpts attached and incorporated hereto as Exhibit 1).[1]

Hence, to address these concerns about procedural barriers, the D.C. Council

enacted several procedural amendments to the D.C. Whistleblower Protection Act

of 1998 – amendments that took effect on March 11, 2010.  *See* Whistleblower

Protection Amendment Act of 2009, D.C. Act 18-265, D.C. Law 18-117, 57 *D.C.*

*Register* 896 (Jan. 22, 2010) (codified at D.C. Code § 1-615.52 *et seq.*) (attached

---

[1] Online at:  http://dcclims1.dccouncil.us/images/00001/20100409103032.pdf (viewed Sept. 16, 2013).

and incorporated hereto as Exhibit 2).[2]

The 2009 legislation specifically "seeks to . . . address procedural barriers to relief for whistleblowers."  *See* 2009 Report (Ex. 1), at 4.  One of the four "procedural barriers to recovery," *id.* at 6-7, was the procedural requirement in Section 1-615.54(a) that:  "A civil action brought pursuant to this section shall comply with the notice requirements of § 12-309," which provides that "an action may not be maintained against the District of Columbia for unliquidated damages . . . unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing . . . of the approximate time, place, cause, and circumstances of the injury or damage."  *See* D.C. Code Ann. § 12-309 (2001 ed.).

The D.C. Council's first procedural change was to enlarge the statute of limitations under the D.C. Whistleblower Protection Act to either three years after a violation, or one year after the employee learned that a personnel action was motivated by the employee's protected disclosures (whichever comes first).  *See* D.C. Code Ann. § 1-615.54(a)(2); Ex. 2, at 897.

The D.C. Council then specifically recognized that a second procedural change needed to be made in order to effectuate the statutory purpose of the D.C.

---

[2] This statute took effect on March 11, 2010, following the Congressional review period.  *See* Council of the District of Columbia, "Notice:  D.C. Law 18-117, Whistleblower Protection Amendment Act of 2009," 57 *D.C. Register* 3150 (Apr. 16, 2010).  The legislation had twelve co-sponsors, was unanimously approved by all thirteen members on December 15, 2009, and was signed by the Mayor on January 11, 2010.

Whistleblower Protection Act:

> In most instances, the § 12-309 requirement is functionally
> equivalent to a 6-month statute of limitations. Therefore, the
> proposed legislation also explicitly waives the notice provision, such
> that § 12-309 does not preempt claims against the District.

*See* 2009 Report (Ex. 1), at 7.

Thus, in addition to enlarging the statute of limitations, the D.C. Council

expressly amended Section 1-615.54 to provide that: "Section 12-309 shall not

apply to any civil action brought under this section." *See* D.C. Code Ann. § 1-

615.54(a)(3); Ex. 2, at 897. As a result of this procedural amendment, the notice of

claim requirement under Section 12-309 does not apply to claims brought under

the D.C. Whistleblower Protection Act.

**III.    The 2009 Amendment to the Notice of Claim Requirement Is
        Procedural and Should be Applied Retroactively to Claims
        Arising Prior to 2009.**

**A.    Procedural Statutes are Presumed to be Retroactive.**

It is settled law that amendments to statutory provisions that are procedural

are generally presumed to apply retroactively to cases or claims that were pending

as of the date of the statutory enactment or amendment, without requiring a

legislative directive. *See Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994)

("Even absent specific legislative authorization, application of new statutes passed

after the events in suit is unquestionably proper in many situations."); *id.* at 275

("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity. . . . [given] the diminished reliance interests in matters of procedure."); *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711 (1974) ("We anchor our holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.") (procedural amendment properly applied retroactively); *id.* at 715 ("even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect").

The D.C. Court of Appeals, in addressing claims arising under District law, similarly held that procedural changes are to be applied retroactively. *Lacek v. Washington Hosp. Center Corp.*, 978 A.2d 1194, 1197 (D.C. 2009) ("laws which provide for changes in procedure may properly be applied to conduct which predated their enactment"); *Montgomery v. District of Columbia*, 598 A.2d 162, 166 (D.C. 1991) ("Unless a contrary legislative intent appears, changes in statute law which pertain only to procedure are generally held to apply to pending cases. This is true although the transaction which precipitated the dispute took place prior to the enactment of the statute.").

This Court, even before *Landgraf*, similarly recognized the fundamental distinction between procedural and substantive amendments, with the former

11

properly applied retroactively. *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 879

(D.C. Cir. 1993) (holding that "a procedural rule" that "does not alter substantive

law" is to be applied retroactively); *Federal Broadcasting System v. FCC*, 239 F.2d

941, 944 (D.C. Cir. 1956) ("If the amendment is either procedural or remedial in

character the settled rule permits its retroactive application.").

     The commentators and the model rules are in accord. *See* Singer & Singer,

*Statutes and Statutory Construction [Sutherland]*, § 41.4, at 429 (7th ed. 2009)

("Retroactive application is particularly appropriate where a procedural rule is

changed after a suit arises, because rules of procedure regulate secondary rather

than primary conduct."); *id.* at 434-35 ("Courts presume that procedural statutes

apply retroactively."); *Uniform Statute and Rule Construction Act*, § 16 (1995)

("procedural provisions" "affect a pending action or proceeding or a right accrued

before the amendment or repeal takes effect"); *Model Statutory Construction Act*, §

14 cmt. (1965) ("If a procedural statute is amended, the rule is that the amendment

applies to pending proceedings as well as those instituted after the amendment.").

     Critically, it is not necessary for the legislature to specify expressly that a

procedural change in the law is to be applied retroactively in order for retroactivity

to occur. *Bradley*, 416 U.S. at 715 ("Accordingly, we must reject the contention

that a change in the law is to be given effect in a pending case only where that is

the clear and stated intention of the legislature.").

12

Hence, the Supreme Court has carefully differentiated between substantive changes in the law – for which retroactivity is disfavored, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988), and procedural changes in the law – for which retroactivity is favored.  *Landgraf*, 511 U.S. at 264; *Bradley*, 416 U.S. at 711.  This Court has similarly recognized this important dichotomy:  "The *Bowen* presumption must apply in the case of changes in substantive law. . . . The *Bradley* presumption of applicability of law as of the time of decision must pertain to 'remedial provisions – not substantive obligations or rights under a statute.'"  *Moore*, 994 F.2d at 878 (quoting *Gersman v. Group Health Ass'n*, 975 F.2d 886, 898-99 (D.C. Cir. 1992)).

The rationale for allowing retroactive application of procedural statutes is that these "retroactivity provisions often serve entirely benign and legitimate purposes, whether to . . . correct mistakes . . . or simply to give comprehensive effect to a new law Congress considers salutary."  *Landgraf*, 511 U.S. at 267-68.

Where, as here, a statutory amendment is designed to serve a public purpose, then applying it retroactively benefits not only the plaintiff, but also the public at large.  *Bradley*, 416 U.S. at 718 ("In this litigation, the plaintiffs may be recognized as having rendered substantial service both to the Board itself, by bringing it into compliance with its constitutional mandate, and to the community at large by securing for it the benefits assumed to flow from a nondiscriminatory

13

educational system.").  Here, too, MWELA submits that the D.C. Whistleblower

Protection Act is designed to ensure that the District government complies with its

statutory obligations to prevent government misconduct and to deter retaliation

against District employees who make protected disclosures about waste and abuse,

so that procedural changes to that law similarly serve these important

governmental and public interests.

> ## B.     An Amendment to a Notice of Claim Provision Is Procedural.

It is also settled law, both in the District of Columbia and elsewhere, that a

notice of claim statute is a procedural provision, not a substantive provision, so that

an amendment to a notice of claim requirement is a procedural change that can be

applied retroactively.  The D.C. Court of Appeals addressed the recently enacted

notice of claim statute applicable to medical malpractice claims, *see* D.C. Code

Ann. § 16-2801 *et seq.*, which requires that a patient provide the potential

defendant with ninety days' notice before filing a complaint.  In *Lacek*, the Court

of Appeals held that this notice of claim statute was a procedural requirement that

could properly be applied retroactively to injuries arising prior to the date of its

enactment.  *Lacek*, 978 A.2d at 1198.  The rationale is that the "legislative history

of the Act leaves little doubt that the 90-day pre-filing notice requirement was

intended as remedial, procedural legislation," *id.*, so that it could be applied

retroactively, "even in the absence of a clear articulation of the Council's intent

14

about whether to apply the notice provision to causes of action that accrued before the Act's effective date." *Id.*

Under *Lacek*, any subsequent amendment to the medical malpractice notice of claim requirement, including a repeal of that requirement, would similarly be a "procedural" change that could properly be applied retroactively.

The holding in *Lacek* is consistent with the holdings of appellate courts in other jurisdictions. The Supreme Court of Virginia held that the legislative repeal of a notice of claim requirement applied retroactively:

> We hold that . . . [the notice of claim requirement], as well as the repeal provision, are procedural in nature, since they control only the method of obtaining redress or enforcement of rights and do not involve the creation of duties, rights, and obligations. . . .
>
> Because . . . [the notice of claim requirement] prescribed only the procedural aspects of a remedy, they could, at the will of the legislature, be amended or repealed, as long as reasonable opportunity and time were provided to preserve substantive rights. Further, since these former . . . [notice of claim] statutes were procedural, rather than substantive, in nature, neither plaintiff acquired any vested right in these statutes at the time their causes of action accrued.

*Harris v. DiMattina*, 250 Va. 306, 312, 462 S.E.2d 338, 340 (Va. 1995) (citations omitted); *accord Michaud v. Northern Maine Med. Ctr.*, 436 A.2d 398, 400 (Me. 1981) ("We agree . . . that the notice provision . . . being procedural in nature, must be complied with in the commencement of any malpractice action after its effective date.").

15

Similarly, although not addressing the retroactivity issue, the Supreme Court of Washington held that notice of claim requirements are procedural, not substantive. *See Waples v. Yi*, 169 Wash. 2d 152, 161, 234 P.3d 187, 191 (Wash. 2010) (holding that notice of claim statute "does not address the primary rights of either party and deals only with the procedures to effectuate those rights [and] therefore [it] involves procedural law.").

Thus, MWELA submits that the courts in this and other jurisdictions have consistently held that notice of claim provisions are procedural, not substantive, so that amendments thereto, including repeals, can be applied retroactively.

### C.     The Repeal of the Notice of Claim Requirement in the D.C. Whistleblower Protection Act of 1998 Is Procedural.

MWELA respectfully submits that the District's arguments are contrary to this Court's precedent and to the holdings of two Superior Court judges and four U.S. District judges (in five cases in that court).[3]  These decisions held, based on the foregoing precedent, that the 2010 amendment to the D.C. Whistleblower Protection Act, which repealed the Section 12-309 requirement for bringing a whistleblower retaliation claim, was a procedural amendment that could be applied retroactively to claims arising before March 2010.

---

[3] The Appellants' Brief does not cite, let alone distinguish, the rulings made on this point by the D.C. courts in any of these cases.  Although these seven decisions are not binding on this Court, they are persuasive authority that should have been brought to the attention of this Court.

16

(1)     In the first decision to analyze this issue, Superior Court Judge
Braman cited the 2009 D.C. Council Report (Ex. 1 hereto), which identified the
notice of claim requirement as among the "procedural barriers to recovery." *See
Cusick v. District of Columbia*, No. 2008 CA 6915 B, Tr. at 24 (D.C. Super. Ct.
Aug. 17, 2010) (Braman, J.) (excerpts attached and incorporated hereto as Exhibit
3).  Judge Braman discussed the import of the *Montgomery* decision to support the
proposition that:  "Unless a contrary legislative intent appears, changes in statute
law which pertain only to procedure are generally held to apply to pending cases,"
even though "the transaction which precipitated the dispute took place prior to the
enactment of the statute."  *Id.* at 25.  Judge Braman cited the aforementioned
*Model Statutory Construction Act* for its comment that "if a procedural statute is
amended the rule is that the amendment applies to pending proceedings as well as
to those instituted after the amendment."  *Id.* at 28-29.  Thus, the 2010 amendment
applied retroactively, and "all of these authorities constrain the Court to apply the
amendment [retroactively] notwithstanding that this case was pending before the
amendment."  *Id.* at 36; *see also Cusick v. District of Columbia*, No. 08-6915, 2010
D.C. Super. LEXIS 7, at *1 (D.C. Super. Ct. Aug. 17, 2010) (summary judgment
denied as to "the notice requirement of D.C. Code § 12-309").

(2)     Superior Court Judge Edelman reached the same result.  *Davis v.
District of Columbia*, No. 2005 CA 8772 B, 2010 D.C. Super. LEXIS 6 (D.C.

Super. Ct. Nov. 23, 2010). The presumption against retroactivity only applies to substantive changes. *See Davis*, 138 *Daily Wash. L. Reporter* 2497, 2499 (attached and incorporated hereto as Exhibit 4). Thus, "applications of new procedural rules are generally not considered impermissible retroactive applications of the law," and apply "not just to subsequently-filed lawsuits based on conduct that predated their enactment, but to cases pending at the time the new rules take effect." *Id.* at 2499 (citing *Landgraf*, *Lacek*, and *Montgomery*). Based upon this precedent, "the 2009 amendment that abolished the notice of claim requirement for DCWPA cases must be applied in this case." *Id.* at 2500. The same result had recently obtained in *Cusick*. *Id.* at 2501 n.6. Hence, "the 2009 amendment abolishing the D.C. Code § 12-309 notice requirement should apply to this case, and the purported lateness of Plaintiff's notice of claim does not provide a basis for summary judgment on the DCWPA claim." *Id.* at 2500.

(3) U.S. District Judge Bates, in the first federal court decision to address this specific issue, agreed with both the plaintiff and *amicus* MWELA that the notice repeal should be applied retroactively since it was a procedural change. *Winder v. Erste*, No. 03-2623 (JDB), 2011 U.S. Dist. LEXIS 101253 (D.D.C. Mar. 7, 2011). Judge Bates cited the D.C. Court of Appeals' decision in *Montgomery* for the proposition that "unless a contrary legislative intent appears, changes in statutory law which pertain only to procedure are generally held to apply to

18

pending cases." *Id.* at *7 (quoting *Montgomery*, 598 A.2d at 166). Judge Bates also cited the D.C. Council report (Ex. 1 hereto), and stated that "Notice of claim requirements are plainly procedural and not substantive in nature." *Id.* Judge Bates concluded: "Hence, because the 2009 Amendment made procedural changes to the Whistleblower Reinforcement Act that apply to pending cases, and thereby eliminated the pre-suit notice requirement for purposes of this case," *id.*, Mr. Winder was able to bring his whistleblower claim.

(4)     U.S. District Judge Howell, in the second federal court decision to analyze this issue, reached the same result. *Bowyer v. District of Columbia*, 779 F. Supp. 2d 159 (D.D.C. 2011). Judge Howell applied *Landgraf* to find that the amendment was procedural, not substantive:

> To ascertain whether elimination of the pre-suit notice requirement of the Whistleblower Protection Amendment Act is procedural, and may thus be applied retroactively to reinstate the plaintiffs' pre-June 30, 2008 WPA claims, the Court must assess whether the provision affects substantive rights and "attaches new legal consequences" to completed conduct. *See Landgraf*, 511 U.S. at 269-270. The Court concludes that it does not. The only change resulting from the elimination of the pre-suit notice requirement is that it authorizes plaintiffs to assert WPA claims against the District of Columbia without prior notice within six months of their injury. **The amendment does not affect the substantive rights of the parties, nor does it alter the legal obligations of the defendants, who still must refrain from retaliating against whistleblowers.**

*Id.* at 164 (emphasis added). Thus, "the elimination of the pre-suit notice

19

requirement in the Whistleblower Protection Amendment Act is a procedural change, which must therefore be applied to pending actions and claims." *Id.* at 165. Judge Howell noted that Judges Bates, Braman, and Edelman had all reached the same conclusion. *Id.*

Although the District of Columbia attempts to argue that the D.C. Court of Appeals' holding in *Bank of America, N.A. v. Griffin*, 2 A.3d 1070 (D.C. 2010), supports its contention (Appellants' Br., at 42-43), that argument has been squarely rejected. Judge Howell concluded that *Griffin* was inapposite, since in that case, the Court of Appeals "considered retroactive application of a *lis pendens* statute regarding real property, which according to the court 'upended the common-law rule regarding rights of priority in the District of Columbia.'" *Bowyer*, 779 F. Supp. 2d at 164. Judge Howell explained that *Griffin* "is not analogous to the present situation," since the "elimination of the pre-suit notice requirement for WPA claims does not affect property rights or have consequences for other substantive rights." *Id.* In contrast to *Griffin*, the D.C. Whistleblower Protection Amendment Act of 2009 did not "revoke" any party's substantive rights but instead addressed a procedural requirement. Thus, *Griffin*, which addressed a brand-new statute that "upended" the prior common-law scheme, thereby completely changing the substantive rights to property, is inapposite in the context of a procedural amendment to a pre-existing statute that does not affect the

20

substantive rights of any litigant.

(5)     U.S. District Judge Kollar-Kotelly, in the third federal court decision to analyze this issue (and the case on appeal to this Court), reached the same result. *Williams v. Johnson*, 794 F. Supp. 2d 22 (D.D.C. 2011).  Starting with the well-accepted proposition that "courts have historically drawn a distinction between laws that affect substantive rights or obligations and laws that affect procedural rights or obligations," under which "procedural legislation is presumed to apply to pending cases," *id.* at 27, the court concluded that "applying these general principles to the amendment that is at issue in this case is an easy matter." *Id.* at 28.  Just as for the notice requirement in *Lacek*, "neither the presence nor the absence of a pre-suit notice requirement under the DCWPA curtails a plaintiff's right to sue for wrongful conduct (or the potential liability of a defendant to be sued), but instead merely involves 'a procedural requirement' that notice be given before suit may be filed." *Id.* (quoting *Lacek*, 978 A.2d at 1198 n.4).  Here, the notice requirement "does not enlarge the scope of a plaintiff's cause of action or alter the responsibilities and liabilities of the District of Columbia and its employees," since "both prior to and after the elimination of the pre-suit notice requirement, supervisors were always prohibited from retaliating against an employee because of that employee's protected disclosure." *Id.*  Therefore, the notice requirement no longer applies to pending cases:

21

The pre-suit notice requirement was, plain and simple, nothing more than the *procedure* by which a waiver of sovereign immunity might occur. The sovereign has now decided to abandon that procedural requirement. Such a procedural change applies to pending cases, even where the conduct precipitating the case predated the enactment of the legislation. As a result, the pre-suit notice requirement is effectively eliminated from this action.

*Id.* at 29.

(6)     U.S. District Judge Kessler, in the fourth federal court decision to analyze this issue, reached the same result. *Sharma v. District of Columbia*, 791 F. Supp. 2d 207 (D.D.C. 2011). Judge Kessler recognized that Judges Braman and Edelman both held that the amendments were procedural and should be applied retroactively, *id.* at 212, and that "several recent decisions from this District Court have specifically held that the change to the pre-suit notice requirement is procedural and therefore retroactive." *Id.* at 213 n.2 (citing *Bowyer*, *Williams*, and *Winder*). Thus, "In line with applicable D.C. law, this Court holds that the 2010 Amendments to the DCWPA's statute of limitations and § 12-309 notice provision are procedural and therefore retroactive." *Id.* at 214.

(7)     U.S. District Judge Kollar-Kotelly, in the most recent federal court decision to analyze this issue, reiterated the holding she made in *Williams*, stating that "the amendments to the DCWPA eliminated the pre-suit notice requirements for all pending cases." *Payne v. District of Columbia*, 808 F. Supp. 2d 164, 171 (D.D.C. 2011). Hence, the earlier ruling, *Payne v. District of Columbia*, 741 F.

Supp. 2d 196 (D.D.C. 2010), was no longer good law on that point: "To the extent that the Court's summary judgment ruling in the case held to the contrary, it should be vacated as to those grounds." *Payne*, 808 F. Supp. 2d at 171.

MWELA respectfully submits that U.S. District Judges Bates, Howell, Kessler, and Kollar-Kotelly, and Superior Court Judges Braman and Edelman, all reached the correct result. (MWELA submitted an amicus brief at the district court level in *Payne*, *Sharma*, *Williams*, and *Winder*.)

Based on clear precedent from the D.C. Court of Appeals and the U.S. Supreme Court, the notice of claim requirement in the D.C. Whistleblower Protection Act was a procedural requirement, so that the March 2010 repeal of that requirement was a procedural change that should be applied retroactively to claims pending as of March 2010, including in this case.

### D.    The Application of this Procedural Amendment Has No Effect on the District's Sovereign Immunity, Which Was Already Waived in 1998.

This Court should reject the District's attempt to argue that retroactively applying the procedural amendment would deprive it of sovereign immunity (Appellants' Br., at 43-53), since that argument has been fully considered and rejected three times.

Judge Howell, while recognizing that "waivers of sovereign immunity must be unequivocally expressed," found that this argument was meritless, since "the

District waived such immunity when it first enacted the WPA in 1998, allowing

aggrieved District employees to file civil actions and seek relief and damages

under a new WPA cause of action." *Bowyer*, 779 F. Supp. 2d at 165. The repeal

of the notice requirement "does not enlarge the scope of this action, alter the

District's responsibilities, or increase the District's liability under the WPA." *Id.*

Judge Kollar-Kotelly similarly rejected that argument, which was "all but

foreclosed by the decision of the District of Columbia Court of Appeals in *Lacek*,"

and "it fails at the outset because it rests on a fundamental misunderstanding of the

pre-suit notice requirement and its relationship to sovereign immunity." *Williams*,

794 F. Supp. 2d at 29. The notice requirement is "plain and simple, the means by

which the District of Columbia has prescribed the 'terms and conditions imposed

… on [its] waiver of its immunity.'" *Id.* (quoting *Tucci v. District of Columbia*,

956 A.2d 684, 695 (D.C. 2008)). In other words, "the pre-suit notice requirement

was, plain and simple, nothing more than the *procedure* by which a waiver of

sovereign immunity might occur." *Id.*

Judge Kessler similarly concluded that the District's "sovereign immunity

argument lacks merit." *Sharma*, 791 F. Supp. 2d at 213. "With regard to DCWPA

claims, the D.C. government waived its sovereign immunity when it first passed

the statute in 1998. Consequently, the 2010 amendment to the DCWPA's pre-suit

notice requirement did not create a substantive change to the D.C. government's

liability." *Id.* at 213-14 (citing *Bowyer* and *Williams*).

This Court should similarly find that the procedural amendment to the notice of claim requirement under the D.C. Whistleblower Protection Act has no effect on the District's sovereign immunity, which was waived in 1998.

E.     **The Statutory Purposes of Section 12-309 Will Not Be Affected by the Retroactive Application of the Procedural Amendment to the Notice of Claim Requirement of the D.C. Whistleblower Protection Act.**

Amicus MWELA respectfully submits that the statutory purpose of Section 12-309 will not be affected by any retroactive application of the procedural amendments to the D.C. Whistleblower Protection Act, *i.e.*, the repeal of the requirement that a District employee had to submit a notice of claim in order to bring a civil action to enforce her rights to be free of retaliation for having made protected disclosures about government misconduct.

The D.C. Court of Appeals has stated that one purpose of Section 12-309 is to allow the government the opportunity to investigate potential claims. *See Barnhardt v. District of Columbia*, 8 A.3d 1206, 1210 (D.C. 2010) ("The rationale underlying the Section 309 notice requirement is (1) to protect the District against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted.").

At the same time, however, the D.C. Court of Appeals has cautioned that

Section 12-309's "purpose is not to nakedly extinguish as many claims against the District as possible." *Barnhardt*, 8 A.3d at 1213.

MWELA respectfully submits that there are several reasons why this amendment to the D.C. Whistleblower Protection Act will not adversely affect the purposes of Section 12-309, as set forth below.

First, Section 12-309 does not apply to comparable federal retaliation claims.  District employees with statutory claims under the D.C. Whistleblower Protection Act may also have federal claims under 42 U.S.C. § 1983, for violation of their rights under the First Amendment, or under 31 U.S.C. § 3730(h), for retaliation in violation of the False Claims Act – claims that arise from the <u>same</u> conduct that forms the basis for their D.C. Whistleblower Protection Act claims. The pleading requirements, burdens of proof, evidentiary standards, and remedies for these federal claims are comparable to those available under the D.C. Whistleblower Protection Act.

Yet, District employees are <u>not</u> required to submit a notice of claim under Section 12-309 when bringing these and other federal claims.  *See Brown v. United States*, 742 F.2d 1498 (D.C. Cir. 1984) (*en banc*).  This Court explained that a notice of claim requirement was not comparable to a statute of limitations that could be imported into a federal cause of action that did not have its own statute of limitations.  *Id.* at 1506.  This Court concluded that "nothing in federal borrowing

doctrine leads us to believe that state law can precondition the accrual of federal rights of action," *id.* at 1508, so that "noncompliance" with Section 12-309 "cannot bar [appellant's] federal claims." *Id.* at 1509-10.

Here, the ostensible purposes of Section 12-309 – to allow the District an opportunity to investigate a claim within six months of its occurrence and to conserve taxpayer resources – will not be affected by the amendment to the D.C. Whistleblower Protection Act, since many employees with claims under that statute will also have comparable claims under the federal statutes. Indeed, those employees could, if they so chose, bring only federal claims. Yet, under *Brown*, those employees are not required to provide any notice under Section 12-309 of their federal claims, and can instead go right to court. Where, as here, a plaintiff can avail herself of multiple statutory schemes to recover for the same conduct, then a notice of claim requirement as to only one of those statutory schemes serves little or no useful purpose.

Second, amicus MWELA submits that the Whistleblower Protection Amendment Act of 2009 will not adversely affect the purposes of "savings to the taxpayer" or "conserving taxpayer resources" of Section 12-309. In fact, the amendments should actually work to increase taxpayer savings, as expressly recognized by both the D.C. Council and the D.C. Chief Financial Officer. The D.C. Council, in proposing this legislation, stated that:

27

> **There is real value**, albeit difficult to quantify, **whenever a whistleblower identifies potential risks to the District like fraud, waste, and abuse.  Retaliation deters future whistleblowing, thereby affecting the District's bottom line.**  Similarly, visible acts of retaliation by managers and public officials reduce morale, contribute to attrition, and diminish the public trust.  **Finally, the very acts constituting retaliation constitute waste.**

*See* 2009 Report (Ex. 1), at 3 (emphasis added).

The D.C. Chief Financial Officer, who is required to submit a fiscal impact statement for proposed legislation in order to identify the costs of the legislation, submitted a fiscal impact statement for the Whistleblower Protection Amendment Act of 2009.  *See* 2009 Report (Ex. 1), at Att. G (N. Gandhi, Chief Financial Officer, "Fiscal Impact Statement – Whistleblower Protection Amendment Act of 2009" (Nov. 18, 2009)).[4]  This statement concluded that the "proposed legislation would have **no negative impact on the budget** and financial plan," and that the incentive provision of this legislation "could reduce fraud and waste and **ultimately result in savings for the District**."  *Id.* (emphasis added).

Thus, the Chief Financial Officer – the person with the greatest knowledge

---

[4] Commencing in 2006, "all permanent bills and resolutions shall be accompanied by a fiscal impact statement before final adoption by the Council."  *See* D.C. Code Ann. § 1-301.47a(a)(1).  The fiscal impact statement "shall include the estimate of the costs which will be incurred by the District" over the next "four fiscal years."  *Id.* § 1-301.47a(2).  The Chief Financial Officer has the statutory responsibility for preparing these fiscal impact statements.  *See* D.C. Code Ann. § 1-204.24d(25).

of the District's financial situation – similarly recognized that this legislation could

improve the District's financial condition and that it would not adversely affect the

budget.  As a result of this finding, the D.C. Council Committee on Government

Operations and the Environment "finds that **approval of Bill 18-233 will have no**

**fiscal impact**," *i.e.*, it would not impose net costs on the District.  *See* 2009 Report

(Ex. 1), at 10 (emphasis added).

Therefore, MWELA respectfully submits that allowing the amendment to

the D.C. Whistleblower Protection Act to apply retroactively, so that the Section

12-309 notice requirement does not apply to claims brought prior to March 11,

2010, will <u>not</u> impose any additional costs on the District.  Instead, by encouraging

whistleblowers to come forward and make disclosures of government misconduct,

including that relating to waste of taxpayer funds, these amendments should

actually result in a net savings to the taxpayers, as both the D.C. Council and the

D.C. Chief Financial Officer recognized.

## <u>CONCLUSION</u>

For the foregoing reasons, *amicus* MWELA respectfully submits that this

Court should find that the repeal of the Section 12-309 notice requirement by the

D.C. Whistleblower Protection Amendment Act of 2009 was a procedural change

that should be applied retroactively to claims pending as of March 11, 2010, the

effective date of that statutory amendment.

Respectfully submitted,

*/s/ Alan R. Kabat*

_____
Alan R. Kabat, D.C. Bar No. 464258
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
(202) 745-1942 – Fax (202) 745-2627
kabat@bernabeipllc.com


Les Alderman, D.C. Bar No. 477750
Alderman, Devorsetz & Hora, PLLC
1025 Connecticut Avenue, N.W., Suite 615
Washington, D.C. 20036
(202) 969-8220 – Fax (202) 969-8224
lalderman@adhlawfirm.com

*Counsel for Amicus Curiae Metropolitan*
*Washington Employment Lawyers*
*Association*

DATED:  September 16, 2013

## Certificate of Compliance with Rule 32(a)(7)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) because the brief contains 6,987 words, less than half the length permissible for the principal brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) and D.C. Cir. Rule 32(a)(1) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 point Times New Roman.

*/s/ Alan R. Kabat*

_____

Alan R. Kabat

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2013, this brief was served by this

Court's Electronic Case Filing system, with a copy to follow by first class mail,

postage prepaid, to counsel of record:

John F. Karl, Jr.
McDonald & Karl
1150 Connecticut Avenue, N.W.,
Ninth Floor
Washington, D.C. 20036

Holly M. Johnson
Donna M. Murasky
Office of the Solicitor General
441 – 4th Street NW, Suite 600 S
Washington, D.C. 20001

John Hoellen
Office of the General Counsel
Council of the District of Columbia
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

*/s/ Alan R. Kabat*

_____

Alan R. Kabat

**Exhibit 1**

Council of the District of Columbia,
Committee on Government Operations and the Environment,
Report:  Bill 18-233, The Whistleblower Protection Amendment Act of 2009
(Nov. 19, 2009) ("2009 Report") (excerpts)

**Council of the District of Columbia**
**Committee on Government Operations and the Environment**

2009 NOV 23  AM 11: 37

OFFICE OF THE
SECRETARY

## Report
1350 Pennsylvania Avenue, N.W., Washington, DC 20004

To:         Members of the Council of the District of Columbia

From:       Mary M. Cheh, Chairperson
            Committee on Government Operations and the Environment

Date:       November 19, 2009

Subject:    Bill 18-233, the "Whistleblower Protection Amendment Act of 2009"

     The Committee on Government Operations and the Environment, to which Bill 18-233, the "Whistleblower Protection Amendment Act of 2009," was referred, reports favorably on the legislation and recommends its adoption by the Council of the District of Columbia.

### CONTENTS

Statement of Purpose and Effect _____ Page 2

Legislative History _____ Page 2

Background and Committee Reasoning _____ Page 2

Section-by-Section Analysis _____ Page 9

Summary of Public Hearing _____ Page 9

Fiscal Impact _____ Page 10

Analysis of Impact on Existing Law _____ Page 10

Committee Action _____ Page 10

List of Attachments _____ Page 10

## STATEMENT OF PURPOSE AND EFFECT

The purpose of B18-233, the "Whistleblower Protection Amendment Act of 2009," is to enhance whistleblower protections for District employees and create new whistleblower protections for government contractors.

## LEGISLATIVE HISTORY

| | |
|---|---|
| April 7, 2009 | Introduction of Whistleblower Protection Amendment Act of 2009 by Councilmember Mary M. Cheh, Chairman Vincent C. Gray, and Councilmembers Yvette M. Alexander, Muriel Bowser, Kwame R. Brown, Michael A. Brown, David Catania, Jack Evans, Jim Graham, Phil Mendelson, Harry Thomas, Jr., and Tommy Wells |
| April 7, 2009 | Referral of Bill 18-233 to the Committee on Government Operations and the Environment |
| April 17, 2009 | Notice of Intent to Act on B18-233 is published in the *District of Columbia Register* |
| June 12, 2009 | Notice of Public Hearing on B18-233 is published in the *District of Columbia Register* |
| June 26, 2009 | Public Hearing on B18-233 held by the Committee on Government Operations and the Environment |
| November 19, 2009 | Consideration and vote on B18-233 by the Committee on Government Operations and the Environment |

## BACKGROUND AND COMMITTEE REASONING

More than 10 years ago, when the Council of the District of Columbia adopted the Whistleblower Protection Amendment Act of 1998, the Council found that "the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal."[1] In order to preserve the freedom to "blow the whistle" on government wrongdoing, the District's Whistleblower Protection Act (WPA) provides District employees with a cause of action when a supervisor engages in retaliation because of a "protected disclosure" or because of an employee's refusal to comply with an illegal order. Despite this important protection, District employees continue to be subject to retaliation when they report government misconduct. Worse, many District employees remain silent despite the existing protections, because those protections do not go far enough.

---

[1] D.C. Official Code § 1-616.1.

2

The recent scandal at the Office of Tax and Revenue exemplifies the need for legislative action. In November 2007, Harriette Walters was arrested and ultimately pleaded guilty to embezzling over $48 million from District taxpayers over the course of 18 years. Over that time, not one whistleblower came forward to report her crime. The problem was not that her crime was well-concealed; Walters raised countless ostentatious warning signs. Rather, according to investigators, the absence of "a culture of compliance" was a major factor in the brazen fraud lasting so long.[2] Another part of the reason concerned the danger of reprisal. According to the investigators: "[a]n anecdote perhaps explains the silence: when one senior OCFO manager asked his assistant, after the discovery of the fraud, why no one reported the misconduct of members of the Adjustment Unit, [she] responded: 'snitches get stitches.'"[3]

In October 2008, the District's Inspector General affirmed the need for strong whistleblower protections. He testified that "on occasion, complainants to the OIG have advised us that, without [whistleblower] protections, they might be fearful of coming to us with their information."[4] His testimony not only validates the need for strong whistleblower protection laws, it also suggests that many District employees still do not report wrongdoing out of fear of retaliation.

There is real value, albeit difficult to quantify, whenever a whistleblower identifies potential risks to the District like fraud, waste, and abuse. Retaliation deters future whistleblowing, thereby affecting the District's bottom line. Similarly, visible acts of retaliation by managers and public officials reduce morale, contribute to attrition, and diminish the public trust. Finally, the very acts constituting retaliation constitute waste. Surely, the public interest is not well-served by reprisal against a highly paid professional in the form of reassignment to menial tasks.[5]

Despite the need for a robust Whistleblower Protection Act, recent decisions from local courts have diminished the law's efficacy. For example, the United States Court of Appeals for the District of Columbia Circuit recently held that, notwithstanding a one-year statute of limitations, a plaintiff must provide notice of injury within 6 months of the injury.[6] Similarly, the United States District Court for the District of Columbia has held that "there is no implied right of action against supervisors" under the WPA.[7]

---

[2] Council of the District of Columbia, Office of Tax and Revenue Investigation Special Committee, Report of Investigation ("Report"), 6, 109-10.

[3] *Id.* at 58.

[4] Statement of Inspector General Charles Willoughby before the Comm. on Workforce Dev't and Gov't Ops. (Oct. 8, 2007).

[5] *See, e.g.*, Testimony of Thyra Lowe, Public Witness at 3 ("The District taxpayers paid me $75,000 and untold thousands in training to provide top notch management and expertise. Political folly cost the District $200,000 in FTEs and $500,000 in contractors, [n]early $6 million in lost funding and untold man hours to comply with manual drawdown. This and the taxpayer received little additional benefit or improvement in response, preparedness and planning to assure the safety of its citizens. Seems like a pretty high price to pay when you could have had little ole me for a bargain basement price of 75 grand.").

[6] *Winder v. Erste*, 566 F.3d 209, 213-14 (D.C. Cir. 2009).

[7] *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 189 (D.D.C. 2007).

3

This bill aims to clarify and reinforce the protections offered under the WPA. To do so, the proposed legislation both fills some of the judicially created gaps and creates new protections for government whistleblowers. Section 2 addresses whistleblower protections for District employees. Section 3 provides for new whistleblowing protections for government contractors. These provisions will be discussed in detail below.

## A.     District employee whistleblower protections

In order state a claim for whistleblower retaliation, a District employee must typically demonstrate that a "protected disclosure" was a contributing factor to a decision to take a "prohibited personnel action," including termination, demotions, transfers, etc. The proposed legislation seeks to clarify the definition of protected disclosures, expand the scope of prohibited personnel actions, and to address procedural barriers to relief for whistleblowers.

### 1. Nature of disclosure

Duplicative disclosures

One of the main objectives of the proposed legislation is to clarify what constitutes a protected disclosure. Among the clarifications in the bill is that a whistleblower should be free from retaliation even when the protected disclosure is unintentionally duplicative. Currently the WPA defines a protected disclosure to be "any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences" government wrongdoing.[8] Recently, though, courts in the District have approvingly cited precedent from other jurisdictions that eliminated protections for whistleblowers if the underlying information was previously reported.[9] The proposed legislation would amend the definition of protected disclosure to clarify that a disclosure is protected "without restriction . . . [to] prior disclosure made to any person by an employee or applicant."

In the Committee's view, it is better to provide whistleblower protections to two employees who separately make the same protected disclosure than to risk the possibility that either one would withhold information. Prospective whistleblowers should not have to guess about whether a supervisor already knows about misconduct in government. Indeed, it is better for the public body receiving the protected disclosure as well. Repetition of the same allegation may draw heightened attention to overburdened investigators, and even if two whistleblowers disclose some common facts, each could also disclose other unknown facts. Accordingly, the proposed legislation clarifies that a disclosure is protected without restriction to prior disclosure made to any person by an employee or applicant.

---

[8] D.C. Official Code § 1-615.52(a)(6).

[9] *Wilburn v. District of Columbia*, 957 A.2d 921 (D.C. 2008).

4

Duty speech

Another proposed change to the current definition of protected disclosure is to clarify that "duty speech" is protected under the WPA. The issue of "duty speech" has recently come into focus since the United States Supreme Court's recent decision in *Garcetti v. Ceballos*,[10] which held that statements made pursuant to an employee's official duties do not receive the same First Amendment protections as statements made by ordinary citizens. In *Garcetti*, the plaintiff, a district attorney, recommended that his supervisors dismiss criminal charges based on an allegedly improper search warrant, and later became the target of retaliation in the form of reassignment and denial of a promotion. When the plaintiff brought suit alleging that the retaliation violated his First Amendment right to free speech, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[11]

As a matter of public policy, duty speech should be protected for the purposes of the WPA. It is counterproductive to have a situation where two employees—one acting according to her job duties and one not—could make identical disclosures, but one would not receive whistleblower protection. Moreover, given most public employees' sense of civic duty and expertise, the WPA ought to provide protection when they speak about the subject matter of their vocation.[12] Finally, the Committee believes that a duty-speech exception to the WPA is irreconcilable with a District employee's responsibility to report what they believe or reasonably should believe is a violation of law.

## 2. Prohibited retaliation

In addition to clarifying the scope of disclosure, the proposed legislation also expands the set of actions that are impermissible under the WPA. In particular, the proposed legislation explicitly prohibits supervisors from restricting a District employee from furnishing information to the Council, and provides for the withholding of salary of a supervisor who prevents the communication or retaliates against the employee for communicating with the Council. It also amends the WPA to prohibit the practice of retaliatory investigations.

Restrictions on communications with the Council

One of the most important powers of the Council is the power to conduct oversight of its agencies. In order to conduct effective oversight, the Council must have reliable information about the functioning of the District's agencies.[13] One of the most

---

[10] 547 U.S. 410, 421 (2006).

[11] Id. at 421.

[12] Id. at 434.

[13] "A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information—which not infrequently is true—recourse must be had to those who do possess it." *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927).

important sources of such information is District employees—those who actually implement, on the ground level, the laws enacted by the Council.

In recent years, though, there have been significant restrictions placed on employees' communications with Council. Indeed, the Committee has learned that some employees fear that even communicating with members of the Council could lead to termination of employment. Although the Committee appreciates the need for the Executive to supervise its employees and, to a certain extent, manage the official positions and messages of the Executive, the countervailing interest in open information is more important. As a co-equal branch of government, the Council must be empowered to learn relevant facts and data about the government, and to hear the views of District employees, who actually implement the laws enacted by the Council.

Investigations

The proposed legislation would also explicitly prohibit the practice of retaliating against whistleblowers by subjecting them to fitness examinations or other retaliatory investigations. According to testimony presented to the Committee, it is common practice to retaliate against whistleblowers through indirect means, such as subjecting workers in the public safety and the criminal justice system to mental-health examinations, or through the use of selective investigations. Unfortunately, the ease with which fitness evaluations and investigations can be abused in retaliation is disproportionate to the potential harm to a whistleblower's dignity, reputation, and career. Morale of colleagues is also affected by these types of retaliatory activities.

Though no form of whistleblower retaliation is ever appropriate, the Committee believes that such use of fitness examinations or other reprisal investigations as a means to subvert whistleblower protections is particularly disturbing.

The Committee appreciates, of course, that in the course of its ordinary duties, an agency will need to conduct internal investigations. This bill would not prohibit such investigations. Rather, the bill would clarify that the use of *reprisal* investigations are prohibited under District law, even if an investigation did not ultimately result in a change in the terms of employment of a District employee.

**3. Procedural barriers to recovery**

Beyond substantive changes to the District's whistleblower provisions, the Committee recommends that the procedures be amended to ensure that legitimate claims of retaliation are resolved.

First, the bill affects the statute of limitations. Currently, a whistleblower claim must be brought within one year of the alleged violation. Under the proposed legislation, the statute of limitations would be extended to three years, while retaining the one-year limitation applicable once an employee becomes aware of a violation of the WPA. This would reduce the likelihood that a whistleblower's case would be dismissed on

6

procedural grounds while avoiding the possibility of stale claims. Although some have suggested that extending the statute of limitations will allow employees to "lie in wait" before bringing suit, that argument is unconvincing because an employee who has constructive knowledge of a retaliation claim must still bring suit under the current WPA and the proposed legislation within one year.

In addition, the Committee has also amended the WPA's incorporation of the pre-suit notice requirement found in D.C. Official Code § 12-309, which provides that "[a]n action may not be maintained against the District of Columbia for unliquidated damages to person . . . unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing . . . of the approximate time, place, cause, and circumstances of the injury or damage." In most instances, the § 12-309 requirement is functionally equivalent to a 6-month statute of limitations. Therefore, the proposed legislation also explicitly waives the notice provision, such that § 12-309 does not preempt claims against the District.

Another procedural barrier addressed by this bill is the restriction on access to court if a whistleblower chooses to seek administrative remedies. This bill would allow individuals to pursue a civil action even if the employee has litigated before the Office of Employee Appeals or through arbitration. By removing the bar to court, the Committee anticipates that more individuals may feel comfortable pursuing administrative relief, knowing that they have a "safety valve" in the courts.

Finally, the proposed legislation expressly provides a right of action against supervisors and other District personnel, and increases the maximum penalty that may be assessed for supervisors who retaliate. This expansion of potential liability for retaliation is intended by the Committee to reinforce the view that *any* acts of retaliation are unacceptable.

4.    **Rewarding whistleblowers**

Another important feature of the proposed legislation is that it would create a reward system for whistleblowers who are *not* subjected to retaliation. As proposed by the Committee, if a whistleblower helped the District recover or prevent the loss of more than $100,000 in public funds, he would be eligible to receive an award up to $50,000, if the Inspector General, the D.C. Auditor, or other similar law-enforcement authority recommended the award. The Mayor would still retain the discretion as to whether to make the award, and the bill clarifies that there is no entitlement to an award. But even the possibility of an award offers significant potential in helping the District discover waste, fraud, and abuse in government.

The use of financial incentives to reward whistleblowing activity has a number of advantages. First, it aligns the interest of District employees with the public's interest in the disclosure of financial mismanagement or other governmental wrongdoing. Second, as the District's Inspector General indicated, the availability of an award "may give

7

greater awareness in the workforce to this potential for reward."[14] Finally, the provision will encourage whistleblowers to come forward who might otherwise feel uncomfortable about doing so.

**B.      Government contractor whistleblower protections**

In addition to changes made to District employee whistleblower protections, the legislation also extends whistleblower protection to District contractors who expose corruption or theft. According to a 2000 report from the Office of the District of Columbia Auditor, the law does not currently prevent District officials from retaliating against contractors who blow the whistle.[15] The legislation would close that loophole.

In 2007, the U.S. Government Accountability Office noted that the District's procurement system suffers from shortages in monitoring contracts, compliance with laws and regulations, misuse of sole-source contracts, purchasing without written contracts, and showing favoritism to certain vendors. Specifically, the report quotes the District's auditor as saying that the government "desperately needs to improve accountability and ethics in the way the procurement and contracting process is carried out and to restore the faith of residents that tax dollars are being spent judiciously, economically, and competitively."[16]

Presciently, the Government Accountability Office and the Inspector General warned about the dangers of sole-source contracting in OCTO. These dangers were realized when, in April 2008, a whistleblower reported to the FBI that Yusuf Acar, then the acting Chief Security Officer of OCTO, was at the center of procurement fraud suspected to have operated for years.

Because government contractors are especially likely to understand how financial mismanagement can occur, extending protections from retaliation is of critical importance. In *Waters v. Churchill*, the Supreme Court observed that "government employees are often in the best position to know what ails the agencies for which they work."[17] This rationale applies just as strongly to government contractors. Their business experience allows owners, officers, and employees of contracting firms to raise red flags over the behavior of contracting officers and competitors—signals that would not stand out to laymen. For example, employees of government contracting firms may be among the only innocent third parties who could identify whether the requirements or specifications of a government contract were designed to confer an unfair competitive advantage.

---

[14] Letter from Charles Willoughby to the Committee on Government Operations and the Environment (May 7, 2009).
[15] Report of the D.C. Auditor, *Agency Retaliation Against Contractors Appearing Before or Providing Information to the Council* (Apr. 12, 2000).
[16] Report of the U.S. Government Accountability Office, *District of Columbia: Procurement System Needs Major Reform*, GAO-07-159 (Jan. 2007).
[17] 511 U.S. 661, 674 (1994).

8

Moreover, as indicated by the Acar case, the leaders of government contracting firms are uniquely suited to learn of procurement fraud through government employees' solicitation of other bribes and kickbacks. Such crimes are by nature most likely to be hidden from view of government employees and the public. Given the District's unfortunate history of procurement fraud and sometimes questionable reputation among government contractors, the Committee hopes that this provision will result in more firms competing—and thus offering better prices, supplies, or services—for government work.

**C.    Conclusion**

Whistleblower protections alone cannot rid the government of mismanagement, waste, abuse, or fraud. But, they can protect those courageous employees or contractors who risk their livelihoods to expose wrongdoing. And, when whistleblowers' rights are vindicated, it may encourage others to come forward with the information necessary to help the District government improve.

## SECTION-BY-SECTION ANALYSIS

Section 1 provides the long and short title of Bill 18-233.

Section 2(a) amends the definition of "prohibited personnel action" to include retaliatory investigations and the definition of "protected disclosure" to clarify that the mode of disclosure does not affect the protected nature of the disclosure.

Section 2(b) provides that supervisors cannot interfere with communications to the Council.

Section 2(c)-(e) amends the procedure by which an aggrieved employee may bring a whistleblower claim, including a new discretionary cash award for whistleblowers.

Section 2(f) adds a requirement that the District provide employees with an explanation of their whistleblower protections at the commencement of their employment.

Section 2(g) provides that District funds shall not be available for the payment of the salary of any District employees who penalize or restrict other District employees for communicating with the Council.

Section 3 creates new whistleblower protections for government contractors.

Section 4 increases the amount that a relator in a *qui tam* action may recover.

## SUMMARY OF PUBLIC HEARING

The Committee on Government Operations and the Environment held a public hearing on Bill 18-233 on Friday, June 26, 2009. **Councilmember Mary M. Cheh,**

9

Chairperson of the Committee, called the hearing to order at 10:40 a.m. in Room 412 of the John A. Wilson Building. The following witnesses testified before the Committee:

> **Lt. Ronda L. Nunnally**, Public Witness
> **Thyra Lowe**, Public Witness
> **Gerald Pennington**, Public Witness

> **Theresa Cusick**, Public Witness
> **Karen Grey**
> **Thomas Devine**, Legal Director, Government Accountability Project

> **Brender Gregory**, Director, Department of Human Resources

Chairperson Cheh thanked the witnesses for their testimony and called the hearing to a close at 12:10 p.m.

## FISCAL IMPACT

The Committee on Government Operations and the Environment finds that approval of Bill 18-233 will have no fiscal impact. A fiscal impact statement, prepared by the Chief Financial Officer and dated November 18, 2009, is attached to this report.

## IMPACT ON EXISTING LAW

This bill will have an impact on District law as it relates to the protections provided to District employees and government contractors. It will strengthen the ability of employees and government contractors to feel secure in making protected disclosures free from potential government retaliation, and provides more substantive rights when any retaliatory action is taken.

## COMMITTEE ACTION

On Thursday, November 19, 2009, at 2:00 p.m., Chairperson Mary M. Cheh convened a meeting of the Committee on Government Operations and the Environment in Room 120 of the John A. Wilson Building. Present with Chairperson Cheh were Councilmembers Kwame Brown, David Catania, Harry "Tommy" Thomas, Jr., and Tommy Wells.

After consideration of another matter, the Committee considered Bill 18-233, the Whistleblower Protection Amendment Act of 2009. Chairperson Cheh described the legislation and its purpose, and then moved for a vote. The Committee voted unanimously, 5-0, to approve the report and print.

## LIST OF ATTACHMENTS

(A)    Bill 18-233, as introduced
(B)    Committee Print of Bill 18-233

(C)     Notice of Intent to Act, published in the *District of Columbia Register*
(D)     Public Hearing Notice, published in the *District of Columbia Register*
(E)     Public Hearing Agenda and Witness List
(F)     Written Testimony Provided to the Committee
(G)     Fiscal Impact Statement for Bill 18-233

# Government of the District of Columbia
## Office of the Chief Financial Officer



**Natwar M. Gandhi**
Chief Financial Officer

## MEMORANDUM

| | |
|---|---|
| **TO:** | **The Honorable Vincent C. Gray**<br>**Chairman, Council of the District of Columbia** |
| **FROM:** | **Natwar M. Gandhi**<br>**Chief Financial Officer** |
| **DATE:** | **November 18, 2009** |
| **SUBJECT:** | **Fiscal Impact Statement – "Whistleblower Protection Amendment Act of 2009"** |
| **REFERENCE:** | **Bill 18-223 – Committee Print shared with the OCFO on October 19, 2009** |

### Conclusion

Funds are sufficient in the FY 2010 through FY 2013 budget and financial plan to implement the proposed legislation. The proposed legislation would have no negative impact on the budget and financial plan.

### Background

The proposed legislation would improve District employee whistleblower protections by amending the Comprehensive Merit Personnel Act of 1978[1] ("CMPA") to:

- Expand the definition of "protected disclosure" to include duty speech and prior disclosures without restriction;
- Prohibit the practice of retaliatory investigations when an employee comes forward with a whistleblower complaint;

---

[1] Effective March 3, 1979 (D.C. Law 2-139; D.C. Official Code § 1-601.01 *et seq.*)

The Honorable Vincent C. Gray
FIS: Bill 18-223, Whistleblower Protection Amendment Act of 2009
Page 2 of 2

- Allow a protected informant to bring a civil action and an administrative claim against the District or any District employee that was involved in retaliation;
- Permit the District to stop salary payments and increase the maximum penalty that may be assessed for District employees who retaliate; and
- Extend the time allowed to file a civil action to 3 years after a violation occurs.

In addition, the proposed legislation would add a new subsection to CMPA giving the Mayor the authority to provide a monetary reward to a whistleblower whose protected disclosure leads to the recovery or prevention of loss of public funds. If the District is able to recover or prevent the loss of more than $100,000 in public funds based on their protected disclosure, the whistleblower may be eligible for a reward between $5,000 and $50,000, at the discretion of the Mayor.

The proposed legislation would also amend the Employees of District Contractors and Instrumentality Whistleblower Protection Act of 1998[2] to prohibit retaliation by any District employee against contractors who make protected disclosures and extend the time allowed to file a civil action to 3 years after a violation occurs.

Finally, the proposed legislation would amend the Procurement Practices Act of 1985[3] to increase the amount of the reward to a *qui tam*[4] whistleblower from 20% to 25%.

The structure of the financial incentive for employees who come forward with protected disclosures is unique among government whistleblower regulations and some uncertainty exists about how a reward will affect employee behavior. If successful, the incentive could reduce fraud and waste and ultimate result in savings for the District.

**Financial Plan Impact**

Funds are sufficient in the FY 2010 through FY 2013 budget and financial plan to implement the proposed legislation. The whistleblower reward will be based on the recovery or prevention of loss of public funds over $100,000 and the reward will be given out on a case by case basis at the discretion of the Mayor. Federal and the District's anti-deficiency rules prevent the District Government from obligating funds without sufficient resources. As such, any award pledged under the proposed legislation must be accounted for in a budget and financial plan.

---

[2] Effective October 7, 1998 (D.C. Law 12-160; D.C. Official Code § 2-223.01 *et seq.*)
[3] Effective February 21, 1986 (D.C. Law 6-85, D.C. Official Code § 2-308.15(f)(1))
[4] A private individual with knowledge of fraud who brings a civil suit on behalf of themselves and government and can receive part of the penalty recovered.

**Exhibit 2**

Whistleblower Protection Amendment Act of 2009,
D.C. Act 18-265, D.C. Law 18-117, 57 D.C. Register 896 (Jan. 22, 2010)
(codified at D.C. Code § 1-615.52 <u>et</u> <u>seq.</u>)

**VOL. 57 – NO 4**          **FRIDAY, JANUARY 22, 2010**



# *District of Columbia*

# REGISTER

## HIGHLIGHTS

- D.C. Council Issues Act 18-270, "Retirement Incentive Temporary Amendment Act of 2009"

- D.C. Council Schedules a Public Hearing on Bill 8-622 "Legalization of Marijuana for Medical Treatment Initiative Amendment Act of 2010"

- State Superintendent of Education Revises Schedule of Parent Fees for the District of Columbia Government Subsidized Child Care Services

- State Superintendent of Education Proposes Rules that Address Qualifications of Montessori School Directors and Teachers

- Child and Family Services Agency Proposes Rules that Require An Independent Living Program to Employ at least one (1) Social Worker for Every Twenty (20) Residents

USCA Case #12-7074     Document #1456822     Filed: 09/16/2013     Page 58 of 79

**ENROLLED ORIGINAL**

*Codification
District of
Columbia
Official Code*

**2001 Edition**

**2010 Winter
Supp.**

**West Group
Publisher**

AN ACT

D.C. ACT 18-265

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

JANUARY 11, 2010

To amend the District of Columbia Government Comprehensive Merit Personnel Act of 1979 to include conducting an investigation in response to a protected disclosure as a prohibited personnel action, to expand the definition of protected disclosures, to extend the limitations period for whistleblower retaliation claims, to increase the amount of supervisor penalties, to allow an employee to bring a civil action even if he or she has brought an administrative claim, and to establish authority to grant a cash award to an employee whose protected disclosure leads to a recovery by the District; to amend the Employees of District Contractors and Instrumentality Whistleblower Protection Act of 1998 to clarify the definition of a prohibited procurement practice, to prohibit District retaliation against contractors who make protected disclosures, and to extend the limitations period for whistleblower retaliation claims; and to amend the District of Columbia Procurement Practices Act of 1985 to increase the amount that a qui tam plaintiff may receive.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "Whistleblower Protection Amendment Act of 2009".

Sec. 2.  The District of Columbia Government Comprehensive Merit Personnel Act of 1978, effective March 3, 1979 (D.C. Law 2-139; D.C. Official Code § 1-601.01 *et seq.*), is amended as follows:

> (a)  Section 1552(a) (D.C. Official Code § 1-615.52(a)) is amended as follows:   *Amend § 1-615.52*
>> (1)  Paragraph (5) is amended as follows:
>>> (A)  The existing text is designated as subparagraph (A).
>>> (B)  A new subparagraph (B) is added to read as follows:
> "(B)  For purposes of this paragraph, the term :
>>>> "(i)  Investigation" includes an examination of fitness for duty and excludes any ministerial or nondiscretionary factfinding activity necessary to perform the agency's mission".

**ENROLLED ORIGINAL**

"(ii) "Retaliating" includes conducting or causing to be conducted an investigation of an employee or applicant for employment because of a protected disclosure made by the employee or applicant who is a whistleblower.

(2) Paragraph (6) is amended by striking the phrase "by statute" and inserting the phrase "by statute, without restriction to time, place, form, motive, context, forum, or prior disclosure made to any person by an employee or applicant, including a disclosure made in the ordinary course of an employee's duties," in its place.

(b) Section 1553 (D.C Official Code § 1-615.53) is amended to read as follows:     **Amend § 1-615.53**

"Sec. 1553. Prohibitions.

"(a) A supervisor shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order.

"(b) Except in cases where the communication would be unlawful, a person shall not interfere with or deny the right of employees, individually or collectively, to furnish information to the Council, a Council committee, or a Councilmember.".

(c) Section 1554 (D.C. Official Code § 1-615.54) is amended as follows:     **Amend § 1-615.54**

(1) Subsection (a) is amended to read as follows:

"(a)(1) An employee aggrieved by a violation of section 1553 may bring a civil action against the District, and, in his or her personal capacity, any District employee, supervisor, or official having personal involvement in the prohibited personnel action, before a court or a jury in the Superior Court of the District of Columbia seeking relief and damages, including:

"(A) An injunction;

"(B) Reinstatement to the same position held before the prohibited personnel action or to an equivalent position;

"(C) Reinstatement of the employee's seniority rights;

"(D) Restoration of lost benefits;

"(E) Back pay and interest on back pay;

"(F) Compensatory damages; and

"(G) Reasonable costs and attorney fees.

"(2) A civil action shall be filed within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first.

"(3) D.C. Official Code § 12-309 shall not apply to any civil action brought under this section.".

(2) Subsection (b) is amended by striking the phrase "employing District agency" and inserting the word "defendant" in its place.

(3) A new subsection (e) is added to read as follows:

"(e)(1) If a protected disclosure assists in securing the right to recover, the actual recovery of, or the prevention of loss of more than $100,000 in public funds, the Mayor may pay a reward in any amount between $5,000 and $50,000 to the person who made the protected

Codification District of Columbia Official Code, 2001 Edition     2     West Group Publisher, 1-800-328-9378.

000897

**ENROLLED ORIGINAL**

disclosure; provided, that any reward shall be recommended by the Inspector General, the District of Columbia Auditor, or other similar law enforcement authority.

"(2) This subsection shall not create any right or benefit, substantive or procedural, enforceable at law or equity, by a party against any District government agency, instrumentality, officer, employee, or other person.".

(d) Section 1555 (D.C. Official Code § 1-615.55) is amended as follows:     **Amend § 1-615.55**

(1) Subsection (a) is amended as follows:

(A) Strike the phrase "any supervisor, including any manager, department director, or other District official," and insert the phrase "any person" in its place.

(B) Strike the phrase "violated section 1553" and insert the phrase "violated section 1553 or section 203 of the Whistleblower Reinforcement Act of 1998, effective October 7, 1998 (D.C. Law 12-160; D.C. Official Code § 2-223.02)," in its place.

(2) Subsection (b) is amended to read as follows:

"(b) As part of the relief ordered in a judicial proceeding, any person who is found to have violated section 1553 or section 203 of the Whistleblower Reinforcement Act of 1998, effective October 7, 1998 (D.C. Law 12-160; D.C. Official Code § 2-223.02), shall be subject to a civil fine not to exceed $10,000.".

(e) Section 1556(b) (D.C. Official Code § 1-615.56(b)) is amended by striking the     **Amend § 1-615.56**
phrase "No civil action shall be brought" and inserting the phrase "An employee may bring a civil action" in its place.

(f) Section 1557 (D.C. Official Code § 1-615.57) is amended by striking the phrase     **Amend § 1-615.57**
"reporting documents" and inserting the phrase "reporting documents and in a letter provided to employees upon commencement of employment" in its place.

(g) A new section 1558a is added to read as follows:

"Sec. 1558a. Salary restriction for interfering with Council whistleblowers.

"District funds shall not be available for the payment of the salary of any officer or employee of the District who:

"(1) Prohibits or prevents, or attempts or threatens to prohibit or prevent, any other officer or employee of the District from having any direct oral or written communication or contact with any member, committee, or subcommittee of the Council in connection with any matter pertaining to the employment of the other officer or employee or pertaining to the department or agency of the other officer or employee in any way, irrespective of whether the communication or contact is at the initiative of the other officer or employee or in response to the request or inquiry of the member, committee, or subcommittee, of the Council except where the communication or contact would be unlawful; or

"(2) Removes; suspends from duty without pay; demotes; reduces in rank, seniority, status, pay, or performance rating; denies promotion to; relocates; reassigns; transfers; disciplines; or discriminates in regard to any employment right, entitlement, or benefit, or any term or condition of employment, of any other officer or employee of the District, or attempts or

Codification District of Columbia Official Code, 2001 Edition          3          West Group Publisher, 1-800-328-9378.

000898

**ENROLLED ORIGINAL**

threatens to commit any of the foregoing actions with respect to the other officer or employee, by reason of any communication or contact of the other officer or employee with any member, committee, or subcommittee of the Council as described in paragraph (1) of this section.".

Sec. 3. The Employees of District Contractors and Instrumentality Whistleblower Protection Act of 1998, effective October 7, 1998 (D.C. Law 12-160; D.C. Official Code § 2-223.01 *et seq.*), is amended as follows:

(a)  Section 202 (D.C. Official Code § 2-223.01) is amended as follows:    **Amend § 2-223.01**

(1) A new paragraph (6A) is added to read as follows:

"(6A)  "Prohibited procurement action" includes any recommended, threatened, or actual proceeding, based wholly or in part on a protected disclosure made by an employee, officer, or owner of a contractor:

"(A)  Terminate a contract by default or convenience without adequate and documented justification;

"(B)  Unreasonably delay or withhold payment on legitimate vouchers or claims of a contractor;

"(C)  Impose conditions or requirements on the contractor not required by the contract;

"(D)  Take any action designed to or having the effect of impeding a contractor's performance; or

"(E)  Take any other action designed to or having the effect of injuring the business or reputation of a contractor.".

(2)  Paragraph (10) is amended by striking the phrase "an employee" and inserting the phrase "an employee or contractor" in its place.

(b)  Section 203 (D.C. Official Code § 2-223.02) is amended to read as follows:    **Amend § 2-223.02**
"Sec. 203. Prohibitions.

"(a)  A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order.

"(b)  A District government official or employee having the responsibility to evaluate, award, authorize payments, terminate, or otherwise administer a contract for goods or services between the District government and a contractor shall not threaten to take or take a prohibited procurement action against a contractor, or a contractor competing for a contract, based wholly or in part on a protected disclosure made by an employee, officer, or owner of the contractor to a public body.".

(c)  Section 204 (D.C. Official Code § 2-223.03) is amended as follows:    **Amend § 2-223.03**

(1)  Subsection (a) is amended by striking the phrase "A civil action shall be filed within 1 year after a violation occurs or within 1 year after the employee first becomes aware of the violation" and inserting the phrase "A civil action shall be filed within 3 years after a

Codification District of Columbia Official Code, 2001 Edition     4     West Group Publisher, 1-800-328-9378.

**000899**

USCA Case #12-7074     Document #1456822        Filed: 09/16/2013     Page 62 of 79

**ENROLLED ORIGINAL**

violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first" in its place.

(2)  A new subsection (a-1) is added to read as follows:

"(a-1)  A government contractor aggrieved by a violation of section 203(b) may bring a civil action before a court or a jury in the Superior Court of the District of Columbia seeking relief and damages, including an injunction, compensatory damages, reasonable costs, and attorney fees. A civil action shall be filed within 2 years after a violation occurs or within one year after the contractor first becomes aware of the violation, whichever occurs first.".

Sec. 4.  Section 815(f)(1) of the District of Columbia Procurement Practices Act of 1985, effective February 21, 1986 (D.C. Law 6-85; D.C. Official Code § 2-308.15(f)(1)), is amended by striking the phrase "but not more than 20%" and inserting the phrase "but not more than 25%" in its place.

Amend<br>§ 2-308.15

Sec. 5.  Fiscal impact statement.

The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 6.  Effective date.

This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by Council to override the veto), a 30-day period of Congressional review as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)), and publication in the District of Columbia Register.

_____
Chairman
Council of the District of Columbia


_____
Mayor
District of Columbia
APPROVED
January 11, 2010

**Exhibit 3**

<u>Cusick v. District of Columbia</u>,
No. 2008 CA 6915 B (D.C. Super. Ct. Aug. 17, 2010) (Braman, J.)
(excerpts)

1                 SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                              CIVIL DIVISION

3      -----------------------------:
       THERESA CUSICK,              :
4                                   :
                     Plaintiff      :  Civil Action No.
5                                   :
             v.                     :  2008-CA-6915
6                                   :
       DISTRICT OF COLUMBIA,        :
7                                   :
                     Defendant.     :
8      -----------------------------:

9                                        Washington, D.C.

10                                       Tuesday, August 17, 2010

11             The above-entitled action came on for a Hearing
       before the Honorable LEONARD BRAMAN, Senior Judge, Courtroom
12     Number 312, commencing at approximately 9:04 a.m.

13             THIS TRANSCRIPT REPRESENTS THE PRODUCT OF
               AN OFFICIAL REPORTER, ENGAGED BY THE COURT,
14             WHO HAS PERSONALLY CERTIFIED THAT IT REPRESENTS
               HER ORIGINAL NOTES AND RECORDS OF TESTIMONY AND
15             PROCEEDINGS OF THE CASE AS RECORDED.

16                       APPEARANCES:

17             On behalf of the Plaintiff:

18             RICHARD E. CONDIT, Esquire
               KAREN J. GRAY, Esquire
19             Washington, D.C.

20             On behalf of the Defendant:

21             KERSLYN D. FEATHERSTONE, Esquire
               MICHAEL LANZDORF, Esquire
22             Assistant Attorneys General
               Washington, D.C.
23


24
       MISS LORETTA E. KACZOROWSKI          (202) 879-1058
25     Official Court Reporter

                                                                    1

1    positions prior to that.  In fact, she testified that she was

2    looking for jobs after she was transferred.

3         THE COURT:  A jury might accept your perception of

4    the record.  But there's evidence to the temporary.  The jury

5    might accept literally what Miss Cusick says.

6         In any event, I understand your position now on

7    lulling, and I think it's close question.

8         Miss Featherstone, let me ask you about 12-309, the

9    statute on notice to the District, notice to the mayor of a

10   claim within six months of the injury or damage.

11        And specifically, I want to ask you about the

12   retroactivity question.  That is whether the amendment to the

13   code, to the Whistleblower's Act, which stated that under the

14   act notice need not be given.  You say, on behalf of the

15   District, that the statute is not to be applied

16   retroactively.  Is that correct?

17        MS. FEATHERSTONE:  Yes.

18        THE COURT:  Now, this statute applies to the statute

19   of limitations; is that correct?

20        MS. FEATHERSTONE:  We believe it does, yes.

21        THE COURT:  And insofar as that's concerned is it

22   correct then to assume that this statute is procedural in

23   nature, that it affects the remedy; is that correct?

24        MS. FEATHERSTONE:  Well, statute of limitations, I

25   mean 12-309 is not a statute of limitations.

```
 1              THE COURT:  Pardon me?

 2              MS. FEATHERSTONE:  12-309 is not a statute of

 3    limitations, it's a notice argument, and so we don't believe

 4    that the provisions addressing 12-309 are procedural.

 5              THE COURT:  Well, evidently the committee of the

 6    counsel, the committee on Government operations and

 7    environment in its report disagreed with you because at page

 8    six it says -- it refers to, under the heading number three,

 9    and I quote:  Procedural barriers to recovery.  And that

10    section deals with statutory notice, does it not?

11              MS. FEATHERSTONE:  I don't have a copy of the

12    statute in front of me, Your Honor, but --

13              THE COURT:  No, this is the account committee

14    report.

15              MS. FEATHERSTONE:  I don't have a copy of the

16    committee requirement.

17              THE COURT:  I'll pass mine down to you.

18              MS. FEATHERSTONE:  Thank you, Your Honor.

19              THE COURT:  It's on page six of the report.  And

20    that's open to page six.  It refers to procedural barriers,

21    does it not?

22              MS. FEATHERSTONE:  Yes, Your Honor.  The statute of

23    limitations, yes.

24              THE COURT:  All right, would you pass it back to me?

25              MS. FEATHERSTONE:  Yes.
```

24

```
 1            THE COURT:  So, this statute is procedural.

 2            (Pause).

 3            THE COURT:  Now, the case of Montgomery against the

 4    District of Columbia, which I don't think was cited in any of

 5    the briefs, reported at 598 Atlantic Reporter Second, at 162,

 6    states:  Unless a contrary legislative intent appears changes

 7    in statute law which pertain only to procedure are generally

 8    held to apply to pending cases, unquote.  Citing Singer on

 9    Sutherland statutory construction.

10            And it continues:  This is true, although the

11    transaction which precipitated the dispute took place prior

12    to the enactment of the statute, unquote.

13            And it cites a number of cases so holding, and one

14    of them, which was decided by Chief Judge Andrews of the New

15    York Court of Appeals, in Lazaret against Metropolitan Rail

16    -- Railway Company, 145 New York 581, and 40 Northeast 240 at

17    page 241 states:  By the general rule of law the procedure in

18    an action is governed by the law regulating it at the time

19    any question of procedure arises.

20            This must be the correct rule unless procedure is to

21    be involved in chaos, unquote.

22            So, isn't it clear that the statute being involved

23    in a matter of procedure is to be construed to apply to

24    whatever case is pending, even though it may be retroactive?

25            MS. FEATHERSTONE:  No, Your Honor, we don't agree
```

25

1    that the statute is retroactive.  The procedural argument

2    that I just read was regarding statute of limitations

3    argument.  The 12-309 is not a statute of limitations, it is

4    a notice requirement, um, that puts the District on notice of

5    claims.

6            And the Court states that it would include cases

7    that are pending.  Well, then it would lead to believe what

8    does that mean, cases where you have been injured, and you

9    have yet to file notice?  Or cases where court cases have

10    been filed and are pending before a court?

11            The city council was silent as to what should

12    constitute a pending case.  If the Court analogizes this with

13    the Lilly Ledbetter Act that just passed it specifically put

14    a retroactivity clause to state that any claims that were two

15    years prior to the enactment would be considered timely under

16    that statute.  That allowed for claims that would have

17    otherwise been time barred to somehow survive under the Lilly

18    Ledbetter Act.

19            In this case if the counsel -- because the counsel

20    was silent on that the statute would be retroactive, meaning

21    that 12-309 is open, any 12-309 claim could then be filed.

22    If it's -- since 12-309 no longer exists then as long as

23    you're within a three-year statute of limitations period then

24    your claim somehow survives, whereas three years ago would

25    have been too late.  And it would ensue chaos.

```
1              THE COURT:  There is the -- the committee report is

2    clear in my view that the statute is to apply retroactively,

3    and there's a Supreme Court case which I will cite presently

4    dealing with the statute of limitations.  In a case much like

5    ours which the Court applied or sanctioned being applied

6    retroactively.  But let's get to the committee report first.

7              It states on page seven:  In most instances the

8    section 12-309 requirement is functionally equivalent to a

9    six months statute of limitations.

10             Therefore, the proposed legislation also explicitly

11   weighs the notice provision such that 12-309 does not preempt

12   claims against the District, unquote.

13             There's a waiver.  The Court -- the committee report

14   likens the amendment to a waiver of the statute of

15   limitations.  And there's nothing that says the waiver

16   doesn't apply to the pending cases.  It says we waive it.

17             In point of fact this was not an ordinary statute.

18   This statute repeals 13-09 insofar as the Whistleblower's Act

19   is concerned.  The Whistleblower's Act contained an

20   affirmative provision that said that 12-309 applies.  This

21   statute, the amendment, repeals that statute, and a repealer

22   is even more definitely retroactive than is a -- a procedural

23   change, an ordinary procedural change.

24             This is a repeal of a statute.  Which is, I say, is

25   classically retroactive, it means it goes into effect right
```

27

1    now.

2         MS. FEATHERSTONE:  Well, Your Honor, that's an

3    interpretation of the absence of any language specifically

4    stating that it is retroactive.  The Court is to construe it

5    in a very strict and narrow way, and in interpreting it to

6    include any claims within a three-year period that would have

7    otherwise been barred by 12-309 to state that effective March

8    11, 2010, when the statute became effective, that it reached

9    back the three years, because the statute of limitations

10   changed, it reached back three years for any claims that

11   anyone could still file, because they don't have to have

12   12-309.

13        Claims where -- have not -- where there has been no

14   complaint filed with the court because they thought their

15   claim was barred by 12-309 they now have a viable action.

16        And the amendment -- the amendment is silent on how

17   the statute would be interpreted, and it gives an effective

18   date, and no other language regarding pending claims or

19   otherwise or any time period regarding the 12-309.  It's

20   silent on that issue.

21        THE COURT:  Miss Featherstone, the rule that I have

22   stated and demonstrated from the authorities, is also

23   supported by the Uniform Law Commissioner's Model Statutory

24   Construction Act.  This is the model act which has been

25   enacted by most of the states.

```
 1              And in the comment to Rule 14, to section 14, excuse
 2     me, which provides, and I quote, and this is in support of
 3     your position, quote, a statute is presumed to be prospective
 4     in its operation unless it is expressly made retrospective,
 5     unquote.  That's your position.
 6              MS. FEATHERSTONE:  Yes.
 7              THE COURT:  Correct?
 8              MS. FEATHERSTONE:  Yes, Your Honor.
 9              THE COURT:  There's a comment on it.  Quote, if a
10     procedural statute is amended the rule is that the amendment
11     applies to pending proceedings as well as to those instituted
12     after the amendment, unquote.
13              What could be clearer than that?
14              I also want to state -- cite the case of Chase
15     Securities Corporation against Donaldson, and this is a
16     Supreme Court case, reported at 325 U.S. 304, in 1945.
17              This was a change in the statute of limitations, and
18     this change in the statute of limitations affected the case
19     that was pending before the Court of Minnesota to make a
20     change in the statute of limitations.
21              The statute of limitations, as it existed when the
22     case was filed, barred the plaintiff's claim.  The statute
23     was amended during the pendency of the suit by the Minnesota
24     legislature in which the defendant no longer had the defense
25     of the statute of limitations.
```

1        I'm quoting from page 306 of the Supreme Court

2   opinion.  Quote, while proceedings were pending in the lower

3   court the legislature enacted a statute effective July 1,

4   1941, which amended the Blue Sky Laws in many particulars not

5   pertinent here.

6        The section in question added a specific statute of

7   limitations applicable to actions based on violations of the

8   Blue Sky Law, and the Court goes on to explain that, as I

9   said, the defense was no longer applicable, and the Court on

10  page -- please bear with me -- the Court on page 316 said:

11  Certainly it cannot be said that lifting the bar of a statute

12  of limitations so as to restore a remedy lost through mere

13  lapse of time is per se an offense against the 14th

14  amendment, unquote.

15       So, I don't think that the application of -- of the

16  repealer of the section 13 -- excuse me, 12-309, would be

17  considered defective, the Supreme Court has validated that

18  happening, and I fail to see how it really raises a problem.

19  The model statute states that procedural changes apply to

20  pending proceedings.  And it seems to me that we really don't

21  have a problem in that regard.

22       Is there anything further that you wish to say on

23  this -- on this point?

24       MS. FEATHERSTONE:  No, Your Honor.

25       THE COURT:  All right, thank you.

1           THE COURT:  I don't know that I've seen that.

2           MS. FEATHERSTONE:  Well, based on his argument here

3    in court today he wanted to point to the Court some language

4    in the statute that said that the act applied to all actions

5    after 1998, July 13th, 1998.  And we don't believe that that

6    language, um, in any way creates any retroactive status to

7    the amendments.  And we want to just oppose that openly in

8    court, but other than that, Your Honor, we have no further

9    arguments.

10          THE COURT:  Thank you.

11          Based upon the memoranda submitted in support of an

12   opposition to the motion and the arguments advanced at the

13   hearing today, and further, upon the entire record the Court

14   is of the view that the statutory notice provision, section

15   12-309, was repealed, that not only was it -- was the

16   amendment a repealer of the previous provision that made the

17   statutory notice provision applicable to the Whistleblower's

18   Act but that the law of the District as declared in the

19   Montgomery case and cases cited in the Montgomery case, based

20   upon the legislative history of the amendment to the

21   Whistleblower's Act as stated in the committee report, based

22   upon the Uniform Law Commissioner's Model Statutory

23   Construction Act, all of these authorities constrain the

24   Court to apply the amendment notwithstanding that this case

25   was pending before the amendment.

**Exhibit 4**

<u>Davis v. District of Columbia</u>,
No. 2005 CA 8772 B (D.C. Super. Ct. Nov. 23, 2010) (Edelman, J.)

# The Daily Washington
# LAW Reporter

*1898 Photo of Washington Law Reporter Co.'s composing room managed by Frank B. Crown.*

Established in 1874

Volume 138 — Number 235 — Page 2497
Monday, December 6, 2010

*D.C. Superior Court*

## D.C. HUMAN RIGHTS ACT / D.C. WHISTLEBLOWER ACT
## RETROACTIVITY OF AMENDED PROCEDURAL FILING PROVISIONS AND STATUTE OF LIMITATIONS

**Précis**: The statutory provision of D.C. Code § 12-309 requiring six months' advance notice to the District of Columbia before filing suit does not apply to the D.C. Whistleblowers Act. That statute was amended, effective March 2010, extending the one-year statute of limitations for filing suit from one year to three years. While it is true that where amendments to a statute affect claims on the merits there is general presumption against the retroactive application, absent a specific provision in the new statute providing for same, that presumption does not apply to procedural changes. In that instance, the presumption is turned inside out and it is presumed that the intent of the legislature is to apply those changes retroactively to suits pending at the time of the changes, unless the statute says to the contrary. This is particularly apt where the amended provision does not attach new legal consequences to the events completed before its enactment.

**Abstract**: By a fortunate ruling on the retroactivity of post-filing amended procedural requirements in this local employment discrimination case, the Plaintiff was permitted to proceed – mostly. **Facts**: The Plaintiff in this case had been employed by the D.C. Department of Human Services (DHS) in its Office of Grants Management. In August 2001, he was reassigned to a position within DHS's Youth Services Administration at its juvenile detention facility, located in Oak Hill, Maryland (which has since been closed). In November 2004, however, his employment at DHS was terminated altogether. Six months later, in May 2005, he filed a "notice of claim" letter with DHS, alleging that the termination was illegally based on his age, race, gender, national origin, or political affiliation and stating that he intended to pursue "any and all legal claims" thereunder. He filed suit in the instant case sometime later in 2005, based on the D.C. Human Rights Act (HRA). About 18 months later, in November 2006, he filed a second notice of claim with the HRA in which he added contentions that the transfer to Oak Hill and his subsequent termination were illegal acts of retaliation that violated the D.C. Whistleblower's Act (WBA). His motion to amend his complaint in this suit to add those counts was granted in August 2007. This brought his suit to three claims: (1) the original claim for employment termination based on the HRA, (2) retaliation under the WBA, and (3) a claim for violation of "public policy" embodied in those statutes. In addition to the well-known existing requirement that notice must be provided to the District of Columbia of intent to sue (within six months of the event) pursuant to Section 12-309 of the code, at the time of these actions, the WBA's procedural requirement set a limitations period within which to sue (one year from the event or knowledge of same). In January 2010, focusing on the WBA claims, the Government moved for summary judgment on the grounds that these counts were filed outside the statute of limitations in effect at the time of their filing. Meanwhile, however, the WBA was amended in March 2009, effective in March 2010, extending the one-year limitations period to three years.

Each side argued for applicability of the limitations period that supported its version of the filing requirement, with the Plaintiff arguing for retroactivity and the Defendant arguing for the *status quo ante*. **Rulings**: The Court ruled on the issues presented as follows: **(A) Section 12-309.** The Court had no difficulty in ruling that this basic notice provision did not apply to suits under the WBA because that statute explicitly excludes lawsuits under that statute, thus obviating a notice requirement altogether. **(B) Whistleblower Act.** The Court's ruling made two distinct applications to proceedings under this statute. **(1) Substantive Claims.** The Court acknowledged that, where claims on the merits are concerned, there is "general presumption against the retroactive application," absent a specific provision in the new statute providing for same. **(C) Procedural Matters.** Where procedural matters are concerned, however, that presumption is turned inside out. Where the new law impacts only upon procedure, it is presumed that the intent of the legislature is to apply them retroactively to suits pending at the time of the changes, particularly where, as the Court found here, the new provision does not attach "new legal consequences to the events completed before its enactment." Thus, unless a contrary legislative intent appears, "changes in statute law which pertain only to procedure are generally held to apply to pending cases," the Court ruled. To do otherwise, it reasoned based on precedential authority, would result in one body of cases ongoing under one set of procedures and another proceeding

### TABLE OF CASES

*D.C. Superior Court*

Davis v. D.C. .............................2497

### Also in this issue

Legal Notices.............................2502

Limitations  — cont'd on page  2498

**The Daily Washington Law Reporter**

ISSN 10666095 The Daily Washington Law Reporter is a newspaper of general circulation, published daily, Monday through Friday, except legal holidays by:

**The Daily Washington Law Reporter Co.**
100 E. Pratt Street,
Suite 2520
Baltimore, MD 21202

Phone: 410.244.6688
Fax: 410.244.6651
www.DWLR.com

Copyright © 2010 Daily Washington Law Reporter Company. Material published in the Daily Washington Law Reporter is compiled at substantial expense and is for the sole and exclusive use of the subscriber. It may not be published, resold, recorded or reused in any manner, in whole or part, without the publisher's consent. Any infringement will be subject to legal redress.

**SUBSCRIPTION RATES:**
(Includes index)

1 Year: $255 • 2 Years: $490

3 Years: $735 • Single copy: $2
(Add sales tax in MD)

Attorneys placing legal advertisements are responsible for payment. Legal advertisements will not be accepted on a contingent basis. Publisher is not responsible for errors in advertisements if publication orders have not been submitted according to the rules of the Court.

**Elizabeth Lewis Enney**, President

**Donald J. Nichols**, Publisher

**Ronald A. Goodbread**, Magistrate Judge (Ret.), Legal Editor

**Michael Schuchat, Esq.**,
Legal Editor Emeritus

To contact the office email us at lawreporter@mindspring.com

**POSTMASTER:**
Send change of address to the:
The Daily Washington Law Reporter Co.,
100 E. Pratt Street
Suite 2520
Baltimore, MD 21202

Periodicals Postage Paid at Baltimore, MD
(USPS 146-840)
Member—American Court and Commercial Newspapers, Inc.; National Newspaper Association; American Bar Association; Historical Society of the D.C. Circuit.

## Limitation *Continued from page 2497*

on new provisions, the result of which, it concluded, "would lead to chaos" on court dockets. The Court therefore held that the procedural changes in the WBA amendments applied to this case. **(D) Applicability.** The Court then applied this ruling to the WPA claims, in terms of (a) the notice provision and (b) the limitations provision. **(1) Notice.** Ruling that "pre-filing notice statutes are procedural in nature," the Court concluded that "changes in these statutes must be applied in lawsuits based on conduct that occurred prior to the enactment of the changes." It was clear to the Court that the City Council "viewed the elimination of the notice claim requirement as a change in procedural law," when it "specifically characterized the abolition of the § 12-309 requirement as the elimination of a 'procedural barrier'" in WBA cases. Therefore, the 2009 amendment should apply to this case, affording no basis for the Defendant's motion for summary judgment thereon. **(2) Limitations Statute.** Finding that the extended statute of limitations under the amendments did "not impinge on vested substantive rights" on the merits of the case, but only "constitute changes in procedure," the Court held that the new three-year limitations period also applied to this case. The complaint here, having been filed within three years of eligibility, was thus salvaged it from being time-barred. **(E) Other Claims.** The Court's ruling on the remaining "public policy" claims, however, was different. Noting that the alleged retaliation in the transfer to Oak Hill had occurred in 2001, three years before the Plaintiff was even terminated, the Court ruled that by any reasonable measure this claim was out of time. Thus, to the extent that any adverse actions were predicated on this aspect of the complaint, they were dismissed.

## DAVIS v. DISTRICT OF COLUMBIA

D.C. Super. Ct. No. 2005 CA 8772 B. Decided Nov. 23, 2010. (Todd E. Edelman, J.). *John F. Karl, Jr.,* Esq. for Plaintiff. *Kerslyn D. Featherstone,* Esq. for Defendant.

### MEMORANDUM OPINION

**EDELMAN,** *Judge:* On January 29, 2010, Defendant filed a Motion for Summary Judgment (hereinafter "Defendant's Motion"). Defendant's Motion raises both procedural and substantive defenses but is ripe with respect to the procedural issues.[1] The Court has considered Defendant's Motion, Plaintiff's Partial Opposition

to Defendant's Motion, Defendant's Reply to Plaintiff's Partial Opposition, and Plaintiff's Supplemental Opposition. In an oral ruling on October 29, 2010, the Court denied summary judgment as to the bulk of the procedural defenses raised in Defendant's Motion. At the joint request of the parties, the Court issues this Memorandum Opinion in further explanation of its October 29, 2010 ruling.

### I. Factual and Procedural Background

Plaintiff had been employed for a number of years as a grants officer at the District of Columbia's Department of Human Services's (DHS) Office of Grants Management. In August 2001, he was reassigned to a position with the Youth Services Administration at the Oak Hill juvenile detention facility. DHS terminated Plaintiff by letter dated November 5, 2004, and his termination became effective November 23, 2004.

On May 2, 2005, Plaintiff sent Defendant a "notice of claim" letter, alleging that the termination was as a result of his age, race, gender, national origin, or political affiliation. The notice of claim concluded by indicating that Plaintiff planned to pursue "any and all legal claims that Mr. Davis has as a result of his wrongful termination," including remedies arising under the D.C. Human Rights Act (DCHRA), the federal Age Discrimination in Employment Act, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1983, "and any other legal claims that have arisen as a result of the matters discussed above." (Pl.'s Compl., Ex. A.) Plaintiff filed a DCHRA claim against Defendant on November 7, 2005.

On November 15, 2006, Plaintiff sent a second notice of claim to Defendant. In addition to the contentions made in the May 2005 notice of claim, the November 2006 notice of claim also alleged that both the 2001 transfer to the Oak Hill facility and the 2005 termination amounted to retaliation against Plaintiff for speaking out about unlawful practices in the award of grants by DHS, and claimed that the actions against him had violated the District of Columbia Whistleblowers Protection Act (DCWPA). (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Amend the Compl., Ex. A.)

In December 2006, Plaintiff filed a Motion to Amend the Complaint with an Amended Complaint attached. That motion was granted on August 20, 2007. The Amended Complaint includes three claims: the original claim of employment termination in violation of the DCHRA, a claim that the District took numerous adverse actions[2] against Plaintiff in violation of the DCWPA, and a claim that Defendant violated public policy.[3]

## II. Analysis

To prevail on a motion for summary judgment, the moving party must establish, based upon the pleadings, discovery, and any affidavits or other materials submitted, that there is no genuine issue as to any material fact and that it is therefore entitled to judgment as a matter of law. *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583 (D.C. 2001); Super. Ct. Civ. R. 56(c). Here, Defendant has based a large portion of its Motion for Summary Judgment on procedural defenses. Specifically, Defendant argues that it is entitled to judgment as a matter of law because the DCWPA claim[4] is barred by (i) Plaintiff's failure to file a timely notice of claim containing the whistleblower and retaliation allegations, and (ii) Plaintiff's failure to bring the DCWPA claim within a one-year statute of limitations period.

Both of Defendant's arguments turn on whether the Whistleblower Protection Amendment Act of 2009, which went into effect in March of 2010, controls the notice of claim and statute of limitations requirements for this case. The 2009 amendments made D.C. Code §12-309 — the statute requiring written notice to the District of Columbia six months prior to the filing of any action for unliquidated damages — inapplicable to DCWPA lawsuits. *See* D.C. Code § 1-615.54(a)(3). The amendments also extended the prior one-year statute of limitations for DCWPA claims, allowing the filing of such claims up to three years after a violation occurs or up to one year after the employee becomes aware of the violation, whichever occurs first. *See* D.C. Code § 1-615.54(a)(2). While Plaintiff urges the Court to apply the 2009 amendments to this case, Defendant argues that these amendments should not apply because they were not in place at the time Plaintiff's claims arose or at the time he filed this suit.

### A. Retroactive Application of the DCWPA Amendment Act

Having considered the arguments of the parties, the Court is persuaded that the DCWPA amendments should apply in this case. Defendant correctly notes that, in the absence of a clear manifestation of legislative intent, there is a general presumption against the retroactive application of new laws. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). The presumption against statutory retroactivity is not, however, applied as strictly as Defendant's arguments make it appear: in recognition of the competing interpretive principle that a court should "apply the law in effect at the time it renders its decision," *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711 (1974), the strength of this presumption depends on the nature and scope of law being considered. The considerations weighing against retroactive application of laws apply with much less force when a new law impacts only upon procedure. While substantive laws create or impair substantive rights, procedural laws generally only "relate to the modes of procedure or confirm or clarify existing rights." *See Edwards v. Lateef*, 558 A.2d 1144, 1146–47 (D.C. 1989); *see also Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 878 (D.C. Cir. 1993). Furthermore, while reliance interests generally militate against the retroactive application of laws, courts have recognized "diminished reliance interests in matters of procedure." *Landgraf*, 511 U.S. at 275.

Because of these differences between procedural and substantive laws, applications of new procedural rules are generally not considered impermissible retroactive applications of the law. As the Supreme Court has stated, "[a] statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment … or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 269–70 (internal quotations and citations omitted). Under this inquiry, new procedural rules may often be applied to lawsuits "arising before their enactment without raising concerns about retroactivity." *Id.* at 275 (internal quotations and citations omitted). *See also Lacek v. Washington Hospital Center*, 978 A.2d 1194, 1197–98 (D.C. 2009); *Edwards*, 558 A.2d at 1146–47 & n. 5.

In addition, the application of new procedural laws applies not just to subsequently-filed lawsuits based on conduct that predated their enactment, but to cases pending at the time the new rules take effect. "Unless a contrary legislative intent appears, changes in statute law which pertain only to procedure are generally held to apply to pending cases." *Montgomery v. District of*

## Daily Washington Law Reporter Rate Information

### LEGAL NOTICES
Subscriber/Non-Subscriber

| | |
|---|---|
| Standard Probate | $118/121 |
| Notice to Creditors | $212/218 |
| Small Estate | $30/30 |
| Foreign w/ property | $199/204 |
| Foreign w/o property | $199/204 |
| Divorce | $100/105 |
| Custody | $100/105 |
| Change of Name | $100/105 |
| Annual Report | $35/35 |

All other notices, including Government Notices, Order Nisi, and Public Auction will continue on a $2.08 per line/per insertion basis.

### ADVERTISING RATES
CLASSIFIED ADS

| | |
|---|---|
| 1 - 5 ad insertions | $.42/.45 per word |
| over 5 insertions | $.31/.35 per word |

DISPLAY ADS

| | |
|---|---|
| Full Page | $300.00 |
| 1/2 Page | $195.00 |
| 1/4 Page | $100.00 |
| 1/12 Page | $70.00 |
| 1/16 Page | $35.00 |

Discounts also given based on number of insertions.

### SUBSCRIPTION RATES

| | |
|---|---|
| One Year | $255 |
| Two Years | $490 |
| Three Years | $735 |

Plus tax of $15.30 per subscription if mailed to MD address

### DC PROBATE PACKETS

| | |
|---|---|
| 600 Series | $20/30 |
| 800 Series | $25/30 |
| 900 Series | $25/30 |
| Accounting Packet | $10/15 |

### RESEARCH RATES

| | |
|---|---|
| Subscribers | $40.00 per hour |
| Non-Subscribers | $80.00 per hour |
| Back Issues | $10.00 each |

### LEGAL FORMS
The DWLR sells a variety of legal forms. A complete list, as well as prices, can be found at www.DWLR.com.

### SUPERIOR CT. OPINIONS

| | |
|---|---|
| CD-ROM 1972-2001 | $349.95/399.95 |
| COMPENDIUM 1971-2008 | $149.95/199.95 |

plus tax and shipping if applicable



**for more information or to order please phone 410.244.6688 or go online at www.DWLR.com**

*Columbia*, 598 A.2d 162, 166 (D.C. 1991) (internal quotation and citations omitted). In *Montgomery*, the Court of Appeals drew on case law providing that "the procedure in an action is governed by the law regulating it at the time any question of procedure arises"; applying different procedure depending on the time of the filing of the action would lead to "chaos." *Montgomery*, 598 A.2d at 166 (quoting *Lazarus v. Metropolitan Ry. Co.*, 40 N.E. 240, 241 (N.Y. 1895) and *People ex rel. Central New England Ry. Co. v. State Tax Comm'n*, 26 N.Y.S.2d 425, 426 (N.Y. 1941)).[5]

In short, to the extent that the 2009 amendments made procedural law changes to the DCWPA, they must apply to this case.

### B. DCWPA Notice of Claim

The above-cited principles dictate that the 2009 amendment that abolished the notice of claim requirement for DCWPA cases must be applied in this case. Pre-filing notice statutes are procedural in nature, and changes in these statutes must be applied in lawsuits based on conduct that occurred prior to the enactment of the changes. *Lacek*, 978 A.2d at 1198. The legislative history of the DCWPA amendments also reveals that the District of Columbia Council viewed the elimination of the notice of claim requirement as a change in procedural law. A report on the amendments from the D.C. Council's Committee on Government Operations and Environment specifically characterized the abolition of the §12-309 requirement as the elimination of a "procedural barrier." Committee on Government Operations and Environment, *Report on B. 18-233*, at 6. In addition, that report contrasted the notice of claim amendment to the "substantive" amendments elsewhere in the bill. *Id.* at 7. Therefore, the 2009 amendment abolishing the D.C. Code §12-309 notice requirement should apply to this case, and the purported lateness of Plaintiff's notice of claim does not provide a basis for summary judgment on the DCWPA claim.[6]

### C. DCWPA Statute of Limitations

The extended statute of limitations in the 2009 Amendment should also apply to this lawsuit. Changes in statutes of limitation that do not impinge on vested substantive rights also constitute changes in procedural law. *Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Science, Inc.*, 858 A.2d 457, 463 (D.C. 2004). *See also Trinity Broadcasting Corp. v. Leeco Oil Co.*, 692 P.2d 1364, 1366 (Okla. 1984) (treating amendment extending the statute of limitations for securities violations as procedural change which may be applied retroactively). As with the elimination of the notice of claim requirement, the D.C. Council viewed the expansion of the statute of limitations as a procedural change, grouping it with the parts of the amended Act seeking to remove "procedural barriers to recovery" and contrasting it with "substantive changes" to the law. Committee on Government Operations and Environment, *Report on B. 18-233*, at 6. Therefore, in this case Plaintiff can proceed on DCWPA claims filed within three years after the violation occurred or within one year after Plaintiff first became aware of the violation, whichever occurred first. D.C. Code § 1-615.54(a)(2).

To the extent that Plaintiff premises the DCWPA claim on his termination, the Amended Complaint is clearly timely. Plaintiff filed this claim within three years of his termination and less than one year after he first learned (through a September 2006 response to an interrogatory) that the termination violated the DCWPA.

Insofar as the DCWPA claim sounds in other adverse actions during Plaintiff's employment, however, the statute of limitations question becomes more complicated. All of these other actions — Plaintiff's transfer to Oak Hill, failure to assign Plaintiff various duties, failure to identify him on an organizational chart, and so forth — took place in 2001, or at least well before Plaintiff's termination in 2004. Even assuming the existence a "discovery rule" for the tolling of the statute of limitations, by Plaintiff's own theory, he knew of these adverse actions and their retaliatory nature as they occurred. In contrast to his arguments relating to the termination,

## 2009 Updates Now Available for
# Real Estate Practice
# in DC, MD, and VA

Edited by Darrell W. Clark, Partner,
Stinson Morrison Hecker, LLP

A two-volume must for your law library!

### Updates include:

Chapter 14: Ethics and Professionalism, 2009, by Colin W. Uckert, General Counsel, The Shooshan Company

2009 Updated Forms on CD-ROM

| Chapter 14 and CD updates | $60 |
|---|---|
| New Book with updates and CD | $330 |

- **To order by credit card**, phone The Daily Washington Law Reporter at 410.244.6688

- **To order by check**, visit www.realestatepracticebook.com or phone the editor at 202.728.3019



Plaintiff claims no new knowledge that those pre-termination adverse actions were based on retaliation; the only new information Plaintiff claims he gained through discovery relates to the connection between his ultimate termination and Defendant's purported retaliatory motive. Thus, for the non-termination adverse actions, the statute of limitations had run within one year of each of those events, i.e., at the very latest, within a year of November 2004. The DCWPA claim was filed more than a year after November 2004, so to the extent these adverse actions were separate bases for the DCWPA claim, they are time-barred.[7]

Thus, as stated in open court on October 29, 2010, Defendant's Motion for Summary Judgment has been granted with regard to the aspect of Plaintiff's DCWPA claim based on alleged adverse employment actions taken prior to his termination. The Motion has been denied as to all other procedural defenses raised by Defendant. Defendant's Motion for Summary Judgment as to the substantive defenses has been denied without prejudice, pending further discovery and additional briefing according to the schedule set by the Court.

**FOOTNOTES:**

1. Pursuant to an oral ruling made on October 29, 2010, the Court has permitted Plaintiff to conduct a limited amount of additional discovery before responding to the remaining aspects of Defendant's Motion.

2. Specifically, the Amended Complaint alleges that Defendant retaliated against Plaintiff by involuntarily reassigning him to Oak Hill; by failing to give him a formal transfer to Oak Hill or identify him on the Oak Hill organizational chart; by refusing to assign him grants management responsibilities at Oak Hill; and by terminating him.

3. At the October 29, 2010 hearing, Plaintiff clarified that this is a claim for wrongful termination in violation of public policy.

4. At the October 29, 2010 hearing, the Court denied the instant Motion as to both the DCHRA and public policy claims. The DCHRA claim was timely filed within the one-year statute of limitations period, and a D.C. Code §12-309 notice of the DCHRA claim was timely sent within six months of Plaintiff's termination. The public policy claim

was timely filed within the three-year statute of limitations period, and the May 2005 notice of claim — which focused on Plaintiff's "wrongful termination" — satisfied the §12-309 requirement for this claim.

5. In its Reply, Defendant argues that applying the 2009 amendments to Plaintiff's claim would mean that his claim would be treated differently from others filed in the same pre-Amendment time period which have already been resolved. (Def.'s Reply 2.) Defendant's argument does not address the numerous cases holding that new procedural laws should be applied to litigation pending at the time of passage. *See, e.g., Coto v. Citibank FSB*, 912 A.2d 562, 564–67 (D.C. 2006); *Montgomery*, 598 A.2d at 166; *Moore*, 994 F.2d at 879.

6. The Court notes that Senior Judge Braman has reached a similar conclusion in a pending case, *Cusick v. District of Columbia*, No. 2008-CA-6915 (D.C. Super. Ct.). In an oral ruling at a motions hearing, Judge Braman held that the 2009 amendment abolishing the §12-309 notice requirement applied to a DCWPA claim that arose in 2007 and was filed in 2008. Judge Braman relied largely on *Montgomery* and the cases cited therein, the legislative history of the DCWPA amendments, and the Uniform Law

Commissioner's Model Statutory Construction Act. (Motions Hr'g Tr. 23:11–29:25 & 35:11–12, Aug. 17, 2010.) The Defendant has brought to the Court's attention that a judge of the United States District Court for the District of Columbia has reached a contrary conclusion, holding that the amendments to the DCWPA could not be applied retroactively. *See Payne v. District of Columbia*, No. 08-cv-00163, 2010 U.S. Dist. LEXIS 103039, at *29–31 (D.D.C. September 29, 2010). The opinion in *Payne*, however, reached these conclusions without considering the distinction between retroactive application of substantive and procedural laws, the legislative history of the DCWPA amendments, or the District of Columbia case law cited above. *Id.*

7. The Court does not agree with Plaintiff's argument that, to the extent the DCWPA claim is based on these non-termination adverse actions, it "relates back" to the original Complaint. This aspect of the DCWPA claim involves not only a separate legal theory, but entirely distinct facts and events.

**Cite as** *Davis v. D.C.* 138 DWLR 2497 (Nov. 23, 2010)(Edelman, J.)(Sup. Ct. DC)

---

**Sections Course Examines**
**Estate Planning for Same–Sex Couples**

On December 9 the D.C. Bar Taxation Section will offer the course "Estate Planning for Same–Sex Couples Residing in the District of Columbia," which will help attorneys navigate the complexities of estate planning now that same-sex marriages are recognized in the District.

Among the challenges is that the District's law to recognize marriages performed in the city and in other jurisdictions goes against federal law, which does not recognize same–sex marriages for any purposes. Brenda Jackson–Cooper, an associate at Arnold & Porter LLP, will lead the discussion on how this disconnect creates both obstacles and opportunities in regards to estate planning.

The course also will provide an overview of the extent to which same–sex marriage in the District changes the bundle of rights and responsibilities previously available to same–sex couples and review the impact of the federal nonrecognition of same–sex marriage on same–sex couples.

The luncheon program, which is sponsored by the D.C. Bar Estate Planning Committee of the Taxation Section, takes place from 12 to 1:45 p.m. at the D.C. Bar Conference Center, 1101 K Street NW, first floor. For more information, contact the Sections Office at 202-626-3463 or visit www.dcbar.org/sections.

From *Inside the Bar* at www.dcbar.org